Chief Justice Robertson
delivered the Opinion of the Court.
In September, 1819, a fieri facias against the estate of John Howell was levied on a tract of land containing between seven and eight thousand acres, to which he had acquired a legal title, and ,c his interest” in which was sold by the sheriff, in the woods, a mile at least from any improvement on the land, and was bought by the attorney of the plaintiff in the execution, at the price of thirty five dollars.
In 1820, Howell gave notice that he would move for a quashal of the sale, but was nonsuited in his motion.
Afterwards, the purchaser, to whom the sheriff had made a conveyance, conveyed an undivided moiety of the land to one McCreery, who was a dormant partner in the purchase at the official sale; and in 1829, he re-conveyed the remaining moiety to Howell, in execution of a compromise to which McCreery, who had, in the mean time, died, had not been a party, and which, by an express stipulation between the parties to it, was not to affect any interest which Howell might assert to the moiety which had been conveyed to McCreery.
Howell having also died, in 1831, his heirs filed a bill in chancery, in 1833, against McCreery’s heirs and others, for the purpose of setting aside the sheriff’s sale, as fraudulent, and for such other relief as should be just.
The bill alleged, among other things, that the land sold under the execution, was worth ten thousand dollars; that it was sold without advertisement, and at a place in the woods not embraced by Howell’s boundary, and that the attorney, who bought it, was privy to those facts.
a purchase at a sheriff’s sale, by has ^he^controi of *e. j3 scrutinized m ch. with peculiar jeal ^aré theVico was grossly inad Manee’of unfeir-sustained. Any a^exe’onTaliT by an attorney “ecurionf will! upon very slight additional facts, be deemed fraudulent, or in trust for the debtor. — Inadequacy of price inferred from the mere fact that a very large tract of land was sold for a very small sum.
The attorney’s answer suggests that, he was poor, and comparatively unknown and friendless at the time of the sale; that McCreery, who was rich, urged him to buy the land for themselves jointly, and agreed to ad-vanee the price, which he accordingly did; that he, himself, for a consideration nearly, if not quite, nominal, re-conveyed his own moiety to Howell, after having conveyed a moiety to McCi’eery, in fulfilment of the secret agreement under which the purchase was made; but that, in making the purchase, he (the attorney) had committed no fraud on Howell. The answer contains no response, however, to the allegations respecting either the manner and place of sale, or the attorney’s knowledge of the facts, as charged.
McCreery’s heirs, in their answer, required proof of most of the material allegations; insisted that the interest bought under the execution was not worth a great deal more than thirty five dollars, at the time of the sale, because, as they alleged, Howell had himself previously sold portions of his tract, and other portions of it were covered by interfering claims; and, making their answer a cross bill, for the purpose of obtaining a partition, they prayed for a decree dividing the land equally between themselves and Howell’s heirs.
The Circuit Judge dismissed the bill; and appointed a commissioner to make partition in a prescribed mode.
We do not concur with the Circuit Court. It seems to us that, the purchase by the' attorney, under his client’s execution should be deemed to have been invalid and voidable, for the following principal reasons: ° 1
First. A purchase by an attorney under his client’s execution, over which he had control, predisposes a Chancellor to look on the transaction with a peculiar jealousy and scrutiny, and should never be sustained when it was for a grossly inadequate price, and exhibits a semblance of unfairness. Howell vs. Baker, 4 Johnson’s Ch'y. Rep. 120; Blight’s heirs et al. vs. Tobin et al., 7 Mon. Rep., 616. In Hall vs. Hallet (1 Cox, 134,) Lord Thurloui said — “no attorney can be permitted to buy in *390 “ things in a course of litigation, of which litigation he “ has the management. This, the policy of justice will “ not endure.” And, although we would not go so far as to interdict all such purchases, we do not doubt that public policy and the analagies of the law require that they should be considered, per se, as in the twilight between legal fraud and fairness, and should be deemed fraudulent or in trust for the debtor, upon slight additional facts.
Sale of a large tract of land under ex’on — parts of which had been sold off; to other portions there were conflicting claims ; but the nature and extent of these reductions were not specified, explained or known; nor does it appear that a sale of a part of the tract would not have satisfied the ex’on: these are sufficient reasons for setting the sale aside.
A sale in the woods , remote from any house or improvement, not within the boundary of the tract sold — 7 or 8000 acres ; not more than 5 persons in all present: — a purchase-under such circumstances) by the pltf’s atto., must be deemed-fraudulent and: void.
*390 Second. Although there is no positive and specific proof of the vendible value of the interest sold under the execution, at the time of the sale,-yet the record exhibits intrinsic evidence that it greatly exceeded thirty five dollars. There is no proof as to the quantity or value of what had been previously sold by Howell himself, or of the extent or character of conflicting claims. It is admitted, however, that those claims, whatever they may have been, have been lost by lapse of time.
Hence we must infer that Howell’s interest in a tract of nearly eight thousand acres of land, was, when spld by the sheriff, worth much more than thirty five dollars.
- Third. An undefined interest in the entire tract said to have been encumbered by conflicting claims unexplained, and curtailed by sales unspecified and unknown, was sold by the sheriff, and thus it was impossible to make a fair sale for a full price. And it neither appears, nor should be presumed, that some specified fraction of the entire tract might not, if properly sold, have commanded not only thirty five dollars, but a price sufficient to have satisfied the execution. Under such circumstances, the sale, as made, should be deemed unreasonable and unfair. In a case very similar to this, Chancellor Kent said — “such a sale carries an abuse on the very face of it.”
Fourth. Sold, as the land was, in the woods, remote from any house, or any improvement, and even at a place not within Howell’s boundary, persons who might have been inclined to bid a fair price could not have been expected to find the spot, and attend at the moment of sale; and the more especially, as there is no proof that the sale was advertised, and also as the tract sold was em *391 braced within lines so extensive as those which included upwards of seven thousand acres. And it appears that, in addition to the sheriff and lawyer, only about three' persons were at the sale, and some of them were there by accident. Upon this ground alone, in the absence of any evidence in support of the fairness of the sale, the purchase by the attorney should be deemed fraudulent in judgment of law, however fair it may have been in fact. Tiernan vs. Wilson, 6 Johns. Ch. Rep. 413, and Howell vs. Baker, supra; Troup vs. Wood, 4 Johns. Ch. Rep. 228.
It is now too late-to question the-jurisdiction of courts of equity to set aside execution sales, for fraud or unfair-
A bill in chancery to set aside-a sheriff’s sale and conveyance-of land sold under ex’on, is, in effect, a suit to-recover the land —the cancelm’t of the deed being but an incident to that main object. It is anal-agous — not to an-action for damages for the fraud, by the recovery of which the-contract of sale would he confirmed— but to an action upon a right of entry— where the object is the recovery of the land; and such a bill will not be barred in less time than will bar a right of entry — 20 yrs. The same bar where the complainant has remained in possession.
It is now too late to question the jurisdiction of a court of equity to set aside a sheriff’s sale and conveyance for unfairness. See the cases already herein cited. And we are of the opinion that, the relief sought in this case, should be decreed to Howell’s heirs, unless their title to it has been lost by lapse of time.
As this suit is brought, not for damages for fraud, but for a cancelment of the deed, and a restitution of the land, it is virtually a proceeding in rem; and the prayer for a cancelment of the sheriff’s deed, is only subsidiary to the chief end of obtaining the land itself. Such a suit in equity should not be barred by adopting the legal limitation to an action for fraud, which confirms the contract. The only suitable analagy is an action for the land founded on a right of entry; wliich would not, as we think, be barred by a shorter limitation than' that of twenty years, even though the defending party should rely on a fraudulent deed more than five years old. As long as the action itself is not barred by time, the right to prove any fact material to the maintenance of it, should not, in our opinion, be barred by any statutory or prescriptive limitation. We have not seen a case in which a suit in chancery, to recover land, and set aside a fraudulent deed in subservience to that end, was ever barred by the lapse of five years, or by less than what would bar a suit for the land, founded on any other equity; and we can perceive no reason or anala-gy which should prescribe any other limitation in the one case than the other. In each, the object is the same, to- *392 wit. the land, or the security of the title thereto, and therefore, in each, the limitation should be the same.
In the case of Howell vs. Baker, supra, Chancellor Kent cancelled a sheriff’s deed, upon a bill filed eight years after it had been made. And in Troup vs. Wood, ubi supra, a similar decree was rendered on a bill filed twelve years after the sheriff’s sale. And in neither of these cases, was any effect given to the lapse of time.
In Blight’s Heirs et al. vs. Tobin et al., supra, this Court decided that, the statutory limitation to a motion to quash a sheriff’s sale for fraud, should not be adopted, by analagy, as a bar to a bill in chancery for the same purpose; and the same reason would apply equally to the limitation prescribed to an action for damages for fraud.
And this Court has also decided, that the limitation to a suit in chancery on the better entry, against an elder patentee in possession, begins to run, not from the date of the patent, but from that of the patentee’s adverse possession; because, though one object of such a bill is to procure a relinquishment of the legal title, yet the ultimate end is to get the land, or fortify and secure the title thereto, which is virtually the same thing; and all questions respecting the title may, as a matter of course, be litigated, whenever a suit for the land itself could be maintained.
And here we think we see the true analagy and the true principle for the adoption of a limitation to a suit in equity, to cancel a deed for land, on the ground of fraud in procuring it. The fraudulent conveyance embarrasses the title, and disquiets the true owner; and as long as he may assert his title and claim the land by suit, he may question his adversaries documents of conflicting title; or if the person who made the voidable deed shall have, nevertheless, continued to occupy the land in his preexistent right, he may impeach the deed for fraud, and compel a cancellation of it, whenever it shall be set up against him, or as long as it remains uncancel-led.
We are, therefore, of the opinion that, as not more than between thirteen and fourteen years had elapsed *393 from the date of the sheriff’s deed to the institution of this suit, the plea of the statute of limitations is unavailing.
The heirs of one ■who purchased land at a sheriff’s sale, knowing that there was fraud in the sale,, do not occupy the condition of a bona fide purchaser without notice: they are in no better condition than their ancestor was in.
If any inference that a party, whose land was sold under ex’on fraudulently, had abandoned his claim to it, results from a lapso of 14 years; it is rebutted by the facts,that thepur chaser was dead, bis heirs infants, and the defend’t, whose land was sold, aged, infirm and poor.
A sale being annulled for fraud, the purchase money must .be restored.
And we are also of the opinion, that the lapse of time does not invalidate the equitable title to relief. Mc-Creery having been jointly concerned in buying the land under execution, his heirs cannot claim any of that peculiar protection or presumption which applies to a bona fide purchaser, fora valuable consideration, without notice of a fraud in the title of his vendor. And we are authorized to infer that Howell never abandoned his claim to be relieved from the sheriff’s sale. When he obtained restitution of the lawyer’s half, McCreery being dead, he could not treat with his infant heirs for their share. And it appears, moreover, that, he (Howell,) was for many years, a decrepid and destitute pensioner on the General Government, for services in the American Revolution. Wherefore, his failing to sue in his lifetime, should not be construed unfavorably to his equitable right to be relieved from all the effects of the sheriff’s sale at the time of his death, and especially as it appears from the tenor of his conduct between the sale and his death, that he had never relinquished or abandoned his claim to restitution.
But the relief sought by the bill should be decreed, upon the restitution of what McCreery paid to the sheriff on the execution against Howell. To such a decree, Howell’s heirs are, in our judgment, now entitled in this case.
Wherefore, the decree of the Circuit Court is reversed, and the cause remanded, with instructions to render a decree conformable with the foregoing opinion.