## Smith *vs* Thompson's Heirs.

ERROR TO THE HOPKINS CIRCUIT.

*Attorney and client. Fraud.*

JUDGE SIMPSON delivered this opinion of the Court.

PHILIP THOMPSON, in his lifetime, had been for many years, acting as the counsel and attorney of the complainant, Moses F. Smith, in the management of a considerable estate, which he claimed as devisee, under the will of his uncle, William B. Smith. By the contract between the parties, Thompson was to attend to the settlement of the whole business, defending such suits as had been brought for any portion of the land devised, and prosecuting any suits that might be necessary to the complete settlement of the estate. A certain specified portion of the estate devised, was designated and set apart for the use of Smith, to which he was to have the exclusive right, the residue of it, after the payment of all the costs incurred in its investigation and adjustment, was to be divided equally between the parties.

CHANCERY.

| 7bm305 |
| f129 678 |

*Case* 84.

June 25.

Case stated.

The estate which was subject to division under this contract, consisted of a considerable body of lands in the county of Henderson, the legal title to which, had been conveyed to a certain William R. Griffith, for the ostensible purpose of indemnifying him as the security of the devisee, Moses F. Smith, who had qualified as the executor of his uncle's will, and had given Griffith as security in the bond.

Whilst affairs stood in this attitude, and before any final adjustment of the estate had been made, and whilst Thompson was still acting as the counsel of Smith, he entered into a contract with a certain Memucan Allen to bring a suit in chancery for him, against Smith. A judgment had been obtained in the name of Daniel J. Smith against the executors of William B. Smith, on which an execution had been issued, and returned, no property found. This judgment, including debt and interest, amounted to upwards of twenty eight hundred dollars, and a transfer of it had been obtained by Allen. It was agreed between Allen and Thompson, that a suit in chancery should be instituted for the purpose of subjecting to the payment of that debt, as well the aforesaid lands in Henderson county, as also another tract of eight or nine hundred acres, in the county of Daviess, being the same tract of land, which, by the contract between Smith and Thompson, belonged exclusively to Smith, the legal title to all of it being in Griffith. The whole of the land in both counties, was to be purchased under the decree, and divided between the parties. Thompson, for his part, was to have one thousand acres of the land in Henderson county, on the north side of Green river, and Allen was to have the residue of the Henderson lands, and also the tract of eight or nine hundred acres in Daviess county, all of which the parties contemplated purchasing under a decree to be obtained in that suit.

The suit was accordingly brought, and after it had been pending upwards of a year, Thompson and his client, Smith, entered into a written agreement, by which it was stipulated that if Thompson would get a decree for Allen against Griffith, Smith would procure Allen to bid the whole amount of the sum decreed, for the land in Daviess,

and Thompson was to have all the unsold land in Henderson's grant, except two hundred and fifty acres reserved for Daniel Smith. The answers of Smith and Griffith were filed, consenting to a sale, Griffith, however, upon the condition that the Court in decreeing a sale, should also decree a credit to the executor, so as to release him as the security.

The suit was managed on both sides by Thompson, a decree for a sale of the whole land was rendered, and a commissioner appointed, who afterwards returned a report, stating that Allen became the purchaser of the land in Daviess, at the price of one hundred and fifty dollars, and Thompson the purchaser of the lands in Henderson, for the sum of twenty five dollars.

A written ratification of the commissioner's sale by Smith, was afterwards procured by Thompson, in which Smith gives up to him all the land in Henderson county, on the north side of Green river, and to Allen all the land on the south side of that river, to pay legacies for which Smith was bound.

After this writing had been executed, the commissioner who made the sale having died, another was appointed by the Court to convey the land to the purchasers. Before, however, the commissioner had acted under the order, Smith brought this suit in chancery, to prevent the execution of the decree—to have the sale vacated upon the ground of fraud, and to compel Griffith to convey to him the legal title. Upon hearing, the Court below dismissed his bill, without giving him any relief whatever.

The management of this suit, brought in Allen's name as complainant, presents the extraordinary scene of a lawyer conducting a suit on both sides, having separate and distinct contracts with the complainant and defendant, and finally purchasing at a sale controlled and superintended by himself, a large tract of land, of the value of several thousand dollars, for the small sum of twenty five.

The motive that influenced Smith to enter into the contract in relation to the suit, is involved in considerable mystery. Allen's conduct throughout, is equally inscrutable; the inference from what does actually appear, be-

ing strong, that they were all acting in concert to accomplish some end that is not avowed or made manifest. Smith may have been induced to believe it important that he should get the title from Griffith. The object of Thompson, however, is perfectly obvious. It was to secure to himself, a large and valuable tract of land, exceeding considerably the part to which he was entitled under his contract with Smith, for the settlement and adjustment of the whole estate.

Whatever may have been Smith's object in consenting to the prosecution of this suit in chancery in the name of Allen, to subject to sale the whole of his land in the counties of Daviess and Henderson, and whatever influences may have been brought to bear on him to induce him to ratify the sale, after it had been made, it is clearly manifest, that the operation has resulted greatly to his prejudice, without having ever promised, so far as he is concerned, a more favorable termination.

The conclusion is, therefore, irresistible, that he acted *The counsel of a party who deceives him by false representations on his part, or who knowingly permits his client to be deceived by the representations of others violates the duty arising from that confidential relation, and will not be permitted to avail himself of any contract made under such circumstances.* throughout under a strong delusion. If it were produced by the representations of Thompson, or knowing its existence, as he must have done, Thompson failed, so far as practicable, by his advice and counsel, to remove it; in either case he was violating the duty that grew out of the confidential relation that existed between him and his client, and will not be permitted to use an advantage resulting from such violation of duty. The purchase, therefore, if invalid in itself, connot be legalized, by the subsequent ratification of Smith, obtained under such circumstances.

If the sale made under the decree, cannot be sustained upon the ground that it was sanctioned by Smith, it is apparent that it cannot be sustained at all. The purchaser is the attorney who managed the sale. The price paid by him is so inadequate as to evince, if not unfairness, at least mismanagement in conducting it. Allen, who is reported by the commissioner to be purchaser of the land in the county of Daviess, was not at the sale when it was made, and disclaims the purchase. Thompson never paid even the small sum bid by him, and the whole demand due to Allen has since been paid by the com-

plainant; all going to prove that the parties themselves, regarded the sale as a mere form, to effect some object, which has not been revealed by them or developed by the proof in the cause. This deduction is fortified by the fact, that although the sale was made by the commissioner in 1832, no deed had been made to the purchasers under the sale, when this bill was filed in 1838.

The same principle which would prohibit trustees and public officers from buying property of which they have the management, at a sale thereof, made and controlled by themselves, would seem to forbid an attorney, who manages the suit for the complainant, and has the right to control, to some extent, the sale made by the commissioner, to become a purchaser at such sale. Particularly ought a purchase, under such circumstances, to be regarded as invalid, when it results in a sacrifice of the property, which might be prejudicial to the complainant in the suit, and beneficial alone to the attorney who purchased. This doctrine has been advanced and advocated, if not expressly sanctioned by this Court: *Foreman, &c.* vs *Hunt, &c.* (3 *Dana,* 614;) *Howell's heirs, &c.* vs *McCreery's heirs, &c.* (7 *Dana,* 388;) *Busey* vs *Hardin, &c.* (2 *B. Monroe,* 407.)

In the case now under consideration, however, if the attitude of the purchaser, and his relation to the parties to the suit, did not preclude him from purchasing, it is sufficient in conjunction with the other circumstances attending the transaction, and giving character to it, to render the purchase invalid, and to authorize, indeed imperatively require the Chancellor to set it aside and disregard it.

The effect to be produced by this step, on the rights of the parties, forms the next subject of inquiry.

On behalf of the complainant, it is urged that the contract entered into by him and Thompson in 1819, should not be considered obligatory, because it was made after Thompson had been employed by him as his counsel to establish the will, and that being his counsel, he took advantage of his situation, to obtain from him a contract for an unreasonable and exhorbitant fee, greatly beyond what was necessary to afford him a full and fair compen-

SMITH
vs
THOMPSON'sH'S.

An attorney who conducts a suit by which property is subjected to sale, and who to some extent has power over the sale, will not be protected in his purchase of the property at a sacrifice. (3 *Dana,* 614; 7 *Ibid,* 388; 2 *B. Mon.* 497.)

SMITH
*vs*
THOMPSON'S H'S.

A contract between attorney
and client, after
a lapse of near
twenty years, by
which the attorney was to have
an interest in the
subject in litigation, having been
acted upon by the
parties, though
it might appear
unreasonable
now, owing to
the enhanced
value of the land,
the subject of
litigation, permitted to stand
when assailed by
one party.

sation for his services, and because, as contended, the
contract is champertous; and consequently, upon setting
aside the purchase made by Thompson, the whole land
should be decreed to the complainant.

This contract had been acted under by the parties, and
acquiesced in by the complainant, for almost twenty years
before the institution of this suit. It may have been, in
its origin, liable to the objections urged against it. It
must be recollected, however, that the extent of the service required, and the length of its duration were uncertain. The value of the land has greatly enhanced since
that period, and appears now to be a much greater compensation than it really was when the contract was made.
It seems to us, therefore, in consequence of the great
lapse of time, the acquiescence of the complainant, the
services rendered by Thompson, and the uncertainty of
the facts upon which it is now attempted to be assailed,
the contract should be regarded as obligatory on the parties. If, as contended, Thompson violated this agreement, and acted inconsistent with the duty that it imposed upon him, in bringing the suit in chancery in the
name of Allen, against his client, still that would not
authorize its rescission, but would only require the interferance of the Chancellor, to protect Smith from all injury that might result from such violation.

From the nature of this contract, and the objections
that are made to it, it may be that the Chancellor would
not, if application for the purpose were made by Thompson or his representatives, enforce it at their instance.
But when a party presents himself in a Court of chancery, seeking its aid and interposition, he is required to
do what is fair and equitable upon his part. Although,
therefore, the Court might not be authorized according to
equitable principles, to regard the contract as obligatory
on Smith, if he were a defendant, and might refuse to
decree its specific execution, yet if it be just and proper
that he should comply with it, the Court will give him
relief only upon the condition that he submits to this
equitable requisition.

We are of the opinion, that upon this principle, Smith
must yield to Thompson's heirs that part of the land in

Henderson county, to which they are entitled, under a fair construction of the contract of 1819. By the terms of this contract, the slaves and ferry tract of land, are to belong exclusively to Smith. Out of the whole balance of the estate, the debts and specific legacies, all the cost incurred in establishing the will, except fees to counsel, and all other cost and expenditure arising from the settlement of the estate, and the adjustment of claims on the land devised, are to be deducted, and the residue is to be equally divided between the parties. If the personal estate which came to the hands of the executors, was inadequate to the payment of the debts and expenses of the administration and specific legacies, then there will be a charge upon the real estate to the extent of the deficit.

It will be necessary, therefore, to have a settlement of the executorial accounts, if one has never been made, to ascertain the facts, that the Court may be enabled to determine whether there is any charge on the land in favor of either party, which will have to be taken into the estimate in making a division of the estate under the contract.

In making partition of the land, so much thereof as has been heretofore appropriated by sale or otherwise, by either of the parties, if it do not exceed the quantity to which such party may be entitled, should form a part of his portion, to be estimated at its value in the condition it was when so appropriated.

The decree which has been obtained in the name of Allen, for the sale of the land, as well as the judgment at law, upon which that decree is based, should be perpetually enjoined, as the debt has been fully paid and discharged by the complainant; and the purchase at the commissioner's sale, should be vacated and annulled.

When the land that each of the parties has a right to under the contract, has been designated by the action of the Court, Griffith should be compelled to re-convey to Smith the ferry tract of land, and all the other land that may fall to him in the division, and also to convey to Thompson's heirs the land allotted to them, retaining in each conveyance however, a lien upon the property, for

his indemnity as security in the bond given by the complainant, as executor, in the County Court.

The deed made by the complainant to Riley during the pendency of this suit, forms no obstacle to the relief sought for by him. The law against champerty has no application in a controversy of this kind.

The Circuit Court having dismissed the complainant's bill, and refused to give him any relief, the decree must be reversed, and cause remanded for further proceedings in conformity with the principles of this opinion.

*Morehead & Reed* for plaintiff; *Harlan & Craddock* for defendants.