## A. Jones and John Mackay v. William Martin.

Where an attorney purchases property at sheriff's sale under an execution of which he has control, and the circumstances warrant an inference of unfairness in the sale ; *held*, in connection with his character as attorney, to be sufficient to constitute him a trustee for the parties whose interests are concerned in the sale.

A purchase by an attorney at sheriff's sale, under an execution of which he has control, is considered by the law to be in the twilight between legal fraud and fairness, and will be deemed fraudulent or in trust for the parties concerned in the sale, upon slight additional facts.

It is scarcely possible that a sale in gross, pursuant to a levy upon a mass of property, without specific description, and embracing undefined and unascertained interests, could be a fair sale of the property for its full value.

Where it is obvious that comparatively inconsiderable distinct parcels of the property sold under such a levy, would, if sufficiently designated and described, have sold for enough to have satisfied the execution, that fact, in connection with the fact that the purchaser was the attorney having the control of the execution and the levy, will suffice to annul the sale, or to constitute the purchaser a trustee for the parties concerned ;—who, in this case, were the defendant in the execution and an intervenor who held a mortgage on part of the property sold, of later date than the judgment upon which the execution issued.

In a suit by the party whose property was so sold, brought for a cancellation of the sale and a re-conveyance to him, it was competent for him to allege and prove an agreement between himself and the purchaser, defendant in such new suit, that the latter should buy in the property and give the defendant in execution, plaintiff in such new suit, time to redeem ; and it was error to exclude evidence of such an agreement, notwithstanding the apparent acquiescence of the defendant in execution in the mode of making the sale. *A fortiori*, it was error to exclude such evidence when offered by the intervenor, to whom no acquiescence or waiver could be imputed.

Appeal from Lavaca. Tried below before the Hon. Fielding Jones.

This suit was brought by Augustus Jones against William Martin, on the 17th of October, 1855. The petition alleged that an execution issued on August 8th, 1855, from the District Court of Lavaca county, against the plaintiff, on a judgment rendered on 17th day of April, 1854, in favor of Charles H. Jordan, for $567 and interest, besides cost. That, on the next day, it

was levied on a tract of land in Lavaca county of from 1,500 to 2,000 acres, and also upon a large number of town lots in the town of Petersburg in said county, and upon "all his mortgages and liens upon houses and lots" in said town,—the value of all which was more than $10,000, which levy was excessive and oppressive. That, on sale day, 4th of September, 1855, the defendant Martin, who was attorney for the plaintiff in the execution and controlled it, in consideration of plaintiff's promise to pay him the amount of the execution, with all interest and cost, within ten days thereafter, agreed to bid in the property for the benefit of plaintiff, and upon such payment within ten days, to re-convey it to him. That, relying on this arrangement, plaintiff allowed the whole of the property levied on to be put up and sold in mass. That Martin bought the property for $900, and represented to plaintiff that it was necessary for him to execute to him, Martin, a receipt for the overplus of the bid above the amount of the execution, in order to obtain a deed from the sheriff. That plaintiff did so execute his receipt for the excess, amounting to $395, of which no part was paid, and Martin thereon obtained the sheriff's deed to himself for the property sold. That, on the eighth day after the sale, plaintiff tendered to Martin the full amount of money, and demanded a re-conveyance of the property; but that Martin refused and still refuses to convey, claiming the property in his own right. That Martin has no property, and consequently cannot respond in damages, and plaintiff fears he may convey the property to an innocent purchaser, and so leave plaintiff without remedy. Prays for an injunction, decree for a re-conveyance, general relief, &c.

The defendant in his answer denied generally and specially the allegations set forth in the petition with regard to the agreement between him and the plaintiff; denied being in any sense trustee for plaintiff; admitted the purchase for his own benefit, and that the excess of the bid over the amount of the execution, $395, was still due the plaintiff; alleged that he had offered to pay it, and now tenders it into court; prays that plaintiff be decreed to receive it, and for general relief.

At the March Term, 1857, John Mackay intervened, setting

forth that plaintiff Jones was indebted to him in the sum of
$5,102, upon five several notes due two years after their date,
October 2, 1854, to secure which plaintiff had, at the same date,
executed to him a mortgage on the land lying outside of the town
of Petersburg, which was part of the property sold at the sheriff's
sale, and purchased by the defendant Martin,—which notes and
mortgage were still unpaid and unsatisfied. That the sheriff's
sale to Martin was fraudulent and void; that the property sold
was worth many times the amount of the execution; that the
land lying outside of Petersburg alone was worth $6,600, and
ten of the lots in Petersburg worth $500 each. Recites and
charges all the facts relative to the agreement between plaintiff
and Martin; prays for judgment against Jones for the amount of
the notes, for a foreclosure of the mortgage, a cancellation of the
sale to Martin, and a sale of the land under the foreclosure, and
for general relief. By an amendment, the intervenor, Mackay,
sought to make the sheriff who conducted the sale, and J. J. Bal-
lard, deputy sheriff, parties defendant,—charging the latter with
combining with Martin to sell the property in gross and procure
it themselves at a sacrifice, and alleging that since the sale Martin
had conveyed to Ballard a portion of the property for a merely
nominal consideration.

The court refused to make the new parties as prayed for by the
intervenor.

The levy of the execution commented on in the opinion was as
follows: " Executed this 9th day of August, 1855, by levying on
the following property of the within named deft., (viz,) all the
land sold by A. Sherill and wife to the deft., A. Jones, being a
part of what is called the Sherill league, lying in Lavaca county,
on the E. bank of the Lavaca river, including the Petersburg
town tract, supposed to contain altogether from 1,500 to 2,000
acres, and also all the houses and lots belonging to said Jones in
said county of Lavaca, and all liens and mortgages the said deft.
may have on any houses and lots in said town of Petersburg."
Evidence offered by plaintiff and the intervenor to prove the agree-
ment between the former and Martin, and the value of the

property, was ruled out by the court, and verdict and judgment for Martin.

Both Jones and Mackay appealed.

*Geo. W. Smith,* for appellant Jones. In a case of a purchase made by the attorney of the plaintiff in the execution, Chief Justice Robertson, in the case of Howell's heirs v. McCreery's heirs, 7 Dana's R., 389, uses this forcible language : "A purchase by an attorney under his client's execution, over which he had control, predisposes the chancellor to look on the transaction with a peculiar jealousy and scrutiny, and should never be sustained when it was for a grossly inadequate price, and exhibits a semblance of unfairness," citing 4th Johnson's Ch. R., 120; 7th Monroe, 616. It may be contended that Jones did not pay the purchase money to the sheriff, and that a trust could not arise in his favor, notwithstanding there may have been a parol agreement before the sale. That is the doctrine which governs a resulting trust which is created by law and not by contract of the parties. (8th Serg. & Rawle, 487; 7 Bar., 420; 2 Iredell Ch. R., 32; 6 Id., 169; 3 Bibb, 177.) The agreement between Martin and Jones amounted to, and was an express and declared trust, not embraced within our statute of frauds.

*William Martin,* and *Howerton, Holt,* and *Stockdale,* for appellee.

*Smith* and *Ford,* for intervenor.

WHEELER, C. J. The circumstances attending the purchase of the land by the attorney of the plaintiff, seem to render it obnoxious to the observations of Chief Justice Robertson in the case of Howell's Heirs v. McCreery's Heirs, (7 Dana, 388,) and of Chancellor Kent in Howell v. Baker, (4 Johns. Ch. R., 118,) to the effect that such a transaction carries evidence of abuse upon its face.

It is questionable whether a purchase by an attorney under his client's execution, over which he had control, would not be deemed,

in itself, invalid in England. In Howell v. Baker, (supra,) the Chancellor quotes an observation of Lord Thurlow, to the effect that "no attorney can be permitted to buy in things in a course of litigation, of which litigation he has the management. This, the policy of justice will not endure." And the Chancellor strongly intimates that the rule disqualifying trustees, solicitors and attorneys, from purchasing at sales brought about by their agency, might justly be applied to the case of an attorney purchasing for his own benefit, at a sale under his client's execution. Waiving the decision of that point, however, the Chancellor held, that the circumstances under which the purchase was made by the attorney warranting an inference of unfairness in the sale, were sufficient, when taken in connection with his character as attorney, to constitute him a trustee for the parties whose interests were concerned in the sale, and decreed accordingly. In Howell's heirs v. McCreery's Heirs, (supra,) the court said they would not go so far as to hold, that all such purchases were interdicted by the law, but that "public policy, and the analogies of the law, require that they should be considered, *per se*, as in the twilight between legal fraud and fairness, and should be deemed fraudulent, or in trust for the debtor, upon slight additional facts."

It is scarcely possible that a sale in gross, pursuant to such a levy upon a mass of property, without any specific description, embracing undefined and unascertained interests, could be a fair sale of the property for its full value. It seems not to admit of doubt, that comparatively inconsiderable distinct parcels of the property, if sufficiently designated and described, would have sold for a sum sufficient to satisfy the execution. Such being the case, the sale of the whole in mass, and in the terms of this extraordinary levy, cannot be deemed otherwise than unreasonable and unjust, and quite sufficient, considering that the purchaser was, the attorney of the plaintiff in execution, having control of the execution and levy, to set aside and annul the sale, or to constitute him a trustee, holding the title in trust for the parties whose interests were concerned in the sale—that is, the defendant in execution and plaintiff in this suit, and the intervenor, whose mortgage, subsequent in date to the lien of the judgment, gave him an

interest. Whatever effect may be ascribed to the presence and silence of the former at the sale, though he should be deemed by his conduct to have waived the irregularities in the levy and sale, this cannot be said of the intervenor; and as to him, at least, the sale under circumstances so calculated to depreciate the property and cause it to sell for greatly less than its value, ought to be deemed invalid.

But, aside from all question of the validity of the sale in other respects, if, in truth, there was an understanding, as alleged, between the plaintiff and defendant at the time of the sale, that the former should buy in the property for the benefit of the latter, and give him ten days within which to redeem by paying the money, and this was a question for the jury, the refusal of the former to abide by and carry out this understanding or agreement, operated a manifest wrong and injustice upon the latter. The effect of such an understanding would be to induce the debtor to relax his efforts to obtain the money immediately, in order to save his property, or to prevent its sacrifice by procuring the intervention of a friend to buy it in for him, or to induce its sale for its fair value. If known or suspected, it was calculated to repress competition and cause the property to sell for less than it would otherwise have brought. Under such circumstances, the purchaser must be deemed to create a trust in behalf of the plaintiff who had the right to redeem the estate by the payment of the debt; and having made a tender of it, the action was well brought to enforce the right to redeem. (Howell v. Baker, 4 Johns. Ch. R., 118.)

The giving of the receipt to the defendant for the excess of his bid above the sum required to satisfy the execution, as the money was not in fact paid, could in no way compromit the plaintiff or affect his right; for he was but carrying out, in good faith on his part, the understanding between them.

The tender, as deposed to by the witness Townsend, appears to have been in time, and much more than sufficient in amount, and to have been refused and the right of the plaintiff to redeem denied, unless the plaintiff would pay the defendant a bonus of one thousand dollars to give up the legal advantage supposed to have

been obtained. Such a demand was manifestly unjust and oppressive, and the plaintiff was under no legal necessity to accede to it. All the defendant had the right to claim was to be re-imbursed the amount expended in satisfying the execution. If, indeed, there was any defect in the tender, it was waived by the failure to indicate it at the time, and assigning a reason for refusing it which was unfounded.

The case, as respects the intervenor, is free from the questions which were raised as to the right of the plaintiff, arising from his conduct at the sale. That very conduct, considered in reference to the defendant's agency in the business, affords strong grounds for the interposition of the court in his behalf.

These views lead us to the conclusion that the court erred, both as to the plaintiff and intervenor, in excluding the evidence offered by them respectively.

The allegations of the petition of the intervenor show no sufficient cause for making the sheriff, McKinney, a party to the suit, since no decree is sought against him. The mere fact that he made the sale could not subject him to a suit. But, as to the deputy, Ballard, who is alleged to have been a party to a fraudulent combination with the defendant to the prejudice of the plaintiff's right, and is charged with being secretly interested with the defendant in the purchase, and to have received from him a deed to a part of the land, the allegations are sufficient to require him to answer to the action of the intervenor.

The judgment is reversed, and the cause remanded for further proceedings.

Reversed and remanded.