## WRIGHT, Ex. vs. WALKER, et al.

1. NEW PARTY: *When required to plead to the merits.*

 Where a person claiming an adverse interest in the subject matter of litigation, is permitted to become a party in order to bring his interest before the court, he should not be permitted to file a demurrer to the complaint.

2. LIS PENDENS: *Tax purchaser not affected by.*

 A tax purchaser *pendente lite* is not bound by the proceedings and judgment.

3. ATTORNEY: *Cannot purchase his client's land at tax sale.*

 The purchase by an attorney, at tax sale, of land in regard to which he has been retained, is inconsistent with his relation to his client, and void, notwithstanding there may have been no bad faith on his part.

STATUTE OF LIMITATIONS: *Applicable to tax sales.*

 The statute requiring suit for the recovery of land sold at tax sale, to be brought within two years, only applies to suits for the recovery or possession of the land, and not to a proceeding to foreclose a mortgage. And where the tax title is impeached for the first time in a supplemental bill, the date of the filing of the original bill will be deemed the commencement of the suit.

APPEAL from *Chicot* Circuit Court.

Hon. HENRY B. MORSE, Circuit Judge. ·

*Garland,* for appellant.

*Carlton, contra.*

HARRISON, J..

On the 20th of February, 1866, Joshua M. Craig, as administrator, with the will annexed of Junius W. Craig, deceased, filed his bill of complaint in the Chicot Circuit Court, against Samuel R. Walker and Eliza Baker Walker, his wife, Clement L. Walker, Richard H. Stewart, and Joseph Simmonds, for a foreclosure of a mortgage on certain lands.

The bill states that the said Samuel R. Walker, on the 22d of December, 1866, executed to the said Junius W. Craig, a mortgage on certain lands, 2400 acres in quantity, in the county of Chicot, to secure the payment of three promissory notes of that date for $6000 each, payable respectively, on the 16th day of June, 1857, 1858 and 1859, given for an unpaid part of the pur-

chase money of the same lands, in which mortgage his wife, the said Eliza Baker Walker, relinquished dower, and the same was duly acknowledged and recorded.

That afterwards Samuel R. Walker executed a mortgage on the same lands to the said Richard H. Stewart, to secure an indebtedness to him, the amount of which is not stated; and the said Joseph Simmonds recovered a judgment against him, but in what court, for what sum, or the date thereof, is not stated, which was also a lien on the lands, and that on the 2d of November, 1865, and after the creation or accrual of these several liens, he sold and conveyed the lands to the said Clement L. Walker, who, at the time of the commencement of the suit, was in the occupancy of them.

Samuel R. Walker and his wife, and Clement L. Walker answered the bill—and admitted all its allegations. They claimed, however, that when Samuel R. Walker purchased the lands from Craig, it was agreed between them, that if upon a survey of the lands it should be found that any part thereof lay in the bed of Lake Mason, or its continuation, Willow Lake, a deduction of ten dollars for every acre so situated, should be made from the purchase money, which agreement on the 11th of April, 1857, was reduced to writing, and signed and sealed, and also duly acknowledged by them; and they averred that many acres thereof do lay in the bed of said lakes, but that the contemplated survey had never been made, and the number ascertained.

And Clement L. Walker also claimed to have purchased the lands at sheriff's sale, on the 16th of April, 1866, under an execution upon Simmond's judgment, and to have received a deed for the same from the Sheriff.

There was no replication to the answers.

Stewart and Simmonds making no defense, the bill was, at the October term, 1866, ordered to be taken as confessed by them.

No further proceedings, except to suggest the bankruptcy of Samuel R. Walker, and make his assignee E. E. Norton, a defendant, appears to have been had until the October term, 1869. when the letters of administration of Joshua M. Craig, having been revoked, and letters testamentary granted to Emma J. Wright, she was substituted for him as complainant, and the cause ordered to proceed in her name as executrix, and she filed a supplemental bill, and made Charles H. Carlton a defendant.

The supplemental bill alleges that the mortgaged lands were, in 1867, sold for taxes, and purchased by Carlton, who had since obtained a deed for them from the tax collector; was claiming them as his own, and proceeding to have his title confirmed by a decree of the court. That the sale was not made in conformity to law, and was illegal, having been made on a day other than that appointed for the sale of lands for taxes, and under an order made at a term of the County Court, not authorized by law; and that Carlton was, at the time he purchased them, the counsel and solicitor of record of complainant in the suit, having been retained and employed by Joshua M. Craig, to conduct and manage the same, and by whom it was brought and had hitherto been attended to and conducted; that the testator's estate was insolvent, and that the tax deed held by Carlton was a cloud upon the title of the lands, and would prevent a sale of them for a full price, and diminish the value of the estate, and was therefore a hindrance and impediment to the relief sought by the original bill, and prays upon his being paid all moneys which may be lawfully due on account of his purchase, he be decreed to surrender the deed, and that such title as he may have should pass to and vest in the purchaser under the decree of foreclosure.

At the April term, 1870, Carlton answered the supplemental bill. He admitted the purchase of the land for taxes, the execution of the deed to him by the tax collector, and that he was

proceeding to obtain a decree for the confirmation of the sale. He, however, denied that he purchased the lands for himself, or that he claimed them as his own. He admitted that, at the time he purchased them, he was the counsel and solicitor of the complainant, and had brought the suit, and had hitherto attended to and conducted the same; but said that he was also the counsel and solicitor of said Richard H. Stewart, the junior mortgagee of the lands, and for whom he had also brought a suit for foreclosure; that the complainant refused to pay the taxes on the lands and prevent the sale, or to redeem them after the sale, giving, as the reason therefor, that she had assigned the mortgage upon which the suit is brought to John A. Whittaker, the executor of Horace F. Walworth, in satisfaction of a debt her testator's estate owed the estate of said Walworth; that he purchased the lands for Stewart, and with money furnished by him for the purpose, to protect his interest as mortgagee, and that he held the title in trust for him. And he alleged that Stewart was then in possession of the lands, and had been for more than two years next before the filing of the supplemental bill, and that the complainant, her testator, or predecessor had not been seized or possessed of them within that time. To this answer replication was filed. At the same term John S. Whittaker, executor of Horace F. Walworth, claiming to be assignee of the notes and mortgage, and also to have purchased an undivided half interest in the land from Stewart, upon his application was made a party, and he thereupon filed a demurrer to the supplemental bill.

At the April term, 1873, the cause came on to be heard, and was dismissed by the court for the want of equity.

The demurrer of Whittaker, which does not appear to have been disposed of before the final hearing, should not have been permitted to be filed. Claiming to have an interest in the

litigation, he was permitted to become a party that he might bring. such interest before the court, which he could do by cross-bill, but in no other way.

If there had been no sale of the lands for taxes, no question could have been raised as to the plaintiff's right to a decree of foreclosure, and we need only inquire whether it can be affected by it.

Ordinarily, he who purchases during the pendency of a suit is held bound by the decree that may be made against the person from whom he derived his title, and the purchase is treated as if it never had an existence, and it does not vary the rights of the parties in the litigation; but a sale for taxes stands upon a different footing.

The authority of the State to make such sale is paramount. to the right of the owner, and all others, and when made in accordance with law is conclusive against all persons.

But Carlton, the counsel and solicitor of the complainant in the suit, was, by his professional relations to her, forbidden to purchase the lands, for it is a well settled principle that no one can be permitted to purchase an interest where he has a duty to perform that is inconsistent with the character of purchaser. *Smith* v. *Thompson's heirs*, 7 B. Mon., 305; *Howell's heirs* v. *McCreery's heirs*, 7 Dana, 388; *Hawley* v. *Cramer*, 4 Cow., 717; *Young* v. *Bank of Orleans*, 9 Paige, 649; *Howell* v. *Baker, 4* John Ch., 118; *Cleavinger* v. *Reimar*, 3 Watts & Serg, 486; *Hull* v. *Hallett*, 1 Cox, 134; *Surget* v. *Byers*, Hemp., 715.

"No attorney," says Lord THURLOW, in *Hall* v. *Hallett*, "can be permitted to buy in things in a course of litigation of which litigation he has the management. This the policy of justice will not endure."

And, in the case of *Cleavinger* v. *Reimar*, which was an action of ejectment, the court held a purchase of the premises after judgment for the plaintiff, but before the defendant was turned out of possession by the defendant's attorney, enured to the benefit of the defendant.

Whilst the evidence shows that the complainant refused to pay the taxes and suffered the lands to be sold, and that Carlton bought them under circumstances which absolve him from all imputation of bad faith or intentional wrong, his purchase was, nevertheless, inconsistent with his relation to the complainant, and the creditors of her testator's estate whom she represented, and for whom she was but a trustee, whose interests the suit was intended to subserve.

Apart from this consideration, it appears to be true, as alleged in the supplemental bill, that the sale was void because not made on the day fixed by law, and was not ordered to be made on the day it was, by a valid order of the County Court, as held in *Chaplin* v. *Holmes*, 27 Ark., 414.

It was proven, as alleged by Carlton in his answers, that Stewart, who, it has been seen, made no defense, had been, at the time the supplemental bill was filed, more than two years in possession of the lands, but the filing of the supplemental bill was not the commencement of a new suit, but a mere continuation and amendment of the original bill; and, if Stewart himself had offered such a defense it would have been inadmissible, not only on account of the invalidity of the title under which he entered, and his possession not being anterior to the commencement of the suit, but because it has no applicability, except in actions for the recovery of the land or the possession of it. *Chaplin* v. *Holmes*, 27 Ark., 414.

The decree of the court below is reversed and the cause remanded to it, with instructions to allow said Whittaker, if he wishes, to file a cross-bill, setting up his claims to the notes and mortgage, and to proceed according to law.