## W. R. McLaury v. Geo. W. Miller.

(Case No. 5375.)

1. Execution sale—Purchase by attorney of judgment creditor—Fraud—
   Inadequacy of consideration.— An attorney controlling a judgment ren-
   dered by a justice of the peace placed an execution in the hands of a
   constable, who on the same day made a return of *nulla bona* thereon.  On
   the same day the attorney obtained another execution, directed to another
   county, which he caused to be levied on one of three town lots which was
   incumbered with a lien of $100, and in connection with two other lots
   was incumbered with another lien of $500.  The lot levied on was worth
   $1,000, and one of the other incumbered lots was worth still more.  The
   attorney was the only bidder at the sale, and bid for the lot $10, or one-half
   the amount of his client's judgment.  In a suit by the judgment debtor to
   set aside the sale, *held:*

   (1) It was the duty of the attorney, if he bid at all, to make the property
   bring a fair price, that his client's judgment might be satisfied.

   (2) To sustain the sale under the facts would give countenance to a prac-
   tice which sound public policy should condemn.

   (3) The officer selling would, under the circumstances, have been author-
   ized to postpone the sale until some competition in bidding could have been
   secured.

   (4) Sound policy and good morals require that a purchase at execution
   sale, made by the attorney of the judgment creditor, should be set aside
   whenever its cancellation is sought by the debtor, who offers to return pur-
   chase money with interest, unless it appears that the sale was fairly made
   and for a fair price.

   (5) The inadequacy of price in this case was manifest, and the additional
   circumstances justify the inference that in a legal sense the sale was fraud-
   ulent, though the purchase may in fact have been prompted alone by zeal
   for the client.

   (6) The sale should have been set aside.

Appeal from Dallas.  Tried below before the Hon. George N.
Aldredge.

The opinion states the case.

*W. R. McLaury* and *Stemmons & Field*, for appellant, cited:
34 Tex., 89; 23 Tex., 42; 1 Tex., 317; 3 Tex., 36; 28 Tex., 758; 2
Tex., 365; 18 Tex., 835; 28 Tex., 780; 18 Tex., 317; 15 Tex., 219;
59 Tex., 684; 52 Tex., 266; 13 Tex., 431; 15 Tex., 25; 27 Tex., 139;
15 Ill., 290; 46 Ill., 402.

*R. D. Coughanour*, for appellee, cited: Taul *v.* Wright, 45 Tex.,
388; Allen *v.* Stephanes, 18 Tex., 658.

Stayton, Associate Justice.— This action was brought to recover
a lot situated in the city of Dallas, and to cancel a deed made to
appellant for the lot, by a constable of Dallas county, who had sold

it under an execution issued from a justice's court in Tarrant county under a judgment in favor of Fokes & Co., against appellee, for about $27.

It appears that the appellant was the attorney for Fokes & Co., and that on June 16, 1883, he caused an execution to be issued on the judgment in favor of Fokes & Co., directed to the sheriff of Tarrant county, which he placed in the hands of the sheriff on the same day, who, not knowing of any property of Miller in the county, immediately returned it with an indorsement of *nulla bona.*

On the same day the appellant caused an execution to issue to Dallas county, which, under his direction, was levied on the lot in controversy, and it was subsequently sold, the appellant becoming the purchaser for the sum of $10.

It appears that the lot in controversy and two others were incumbered with a lien for about $500, and that there was an attachment lien on the lot in controversy for about $100.

The great weight of the testimony tends to show that the lot in controversy was worth about $1,000. The three lots on which the lien existed were contiguous, and one of them shown to be of greater value than the one in controversy.

The judgment in favor of Fokes & Co. has been satisfied, and the appellee tendered into court the sum paid by appellant for the lot and the interest thereon. There is no question made as to proper parties to the suit. There were several persons present at the sale, but no bidder other than the appellant.

The cause was tried by the court, and a judgment rendered in favor of the plaintiff.

That the sum paid for the lot was grossly inadequate is very clear, considered in view of the fact that there was incumbrance on it and other property; and the only inquiry which arises is, do the attendant facts, in connection with this, present such a case as would authorize a court of equity to cancel the deed made to the appellant, the plaintiffs in the execution under which the land was sold having no further interest in the matter?

The appellant was the attorney representing the plaintiffs in the execution, whose duty it was to make the property bring a fair price, in order that the debt due to his principals should be fully paid. He was present at the sale, and, it may be presumed, to some extent controlled it.

There was but one bidder, and that the appellant, who paid less than half due to his principals, for the property, which was of value largely in excess of the sum due to them.

Whether a purchase by an attorney, under an execution of which

he has control, ought in any case to be held valid, unless made by consent of all parties interested, need not be considered in this case; for it is certainly true in this case that to sustain the sale would be to give countenance to a practice which sound public policy condemns.

Under the facts shown to have existed, the officer selling would have been authorized to postpone the sale until some other time when some competition would exist; and a conscientious regard for the interest of the debtor as well as the creditor would probably have prompted him to do so, had not the appellant, as the attorney for the creditor, been present participating in the sale.

Upon this subject we cannot express the matter more clearly than it is done by the distinguished chancellor in Howell v. Baker, 4 Johns. Ch., 120: "The defendant was one of the attorneys to the execution under which the sheriff sold the land, and it might be a question whether an attorney can, in such a case, become a purchaser for his own benefit. He is the agent of the plaintiff, and generally has the control of the execution, and may direct the time and place of sale. It is well known that the sheriff receives his instructions from the attorney, and usually follows them, under the general regulations of the statute, in pressing or in postponing the sale. . . . It is dangerous to allow a person who has such a material agency in the sale, the capacity of buying in, or on his own account. He who is intrusted with the business of others ought not to be allowed to make that business an object of interest to himself. It tends to abuse and corruption."

The question is very clearly presented in Leisenring v. Black, 5 Watts, 304, in which it is held that an attorney cannot purchase at such sales unless he bids a sum sufficient to pay his client's debt.

In Howell's Heirs v. McCreery's Heirs, 7 Dana, 390, it was said: "It seems to us that the purchase by an attorney under his client's execution should be deemed to have been invalid and voidable, for the following principal reasons: First. A purchase by an attorney under his client's execution, over which he had control, predisposes a chancellor to look on the transaction with peculiar jealousy and scrutiny, and should never be sustained where it was for a grossly inadequate price, and exhibits a semblance of unfairness. . . . Lord Thurlow said, 'no attorney can be permitted to buy a thing in course of litigation, of which litigation he has the management. This the policy of justice will not endure;' and although we would not go so far as to interdict all such purchases, we do not doubt that public policy and the analogies of the law require that they should

be considered *per se* as in the twilight between legal fraud and fairness, and should be deemed fraudulent or in trust for the debtor upon slight additional grounds." The following cases bear upon the same question: Blight's Heirs *v.* Tobin, 7 Monroe, 616; Harper *v.* Perry, 28 Iowa, 61; McKay *v.* Martin, 26 Tex., 61.

The cases are numerous in which it has been held that the attorney of the creditor, who purchases under an execution which he controls, holds as a trustee for his client the property purchased, if the client elects to so treat him, even though the attorney may have paid full value, unless he buys with the consent of his client; and we are of the opinion that such · is the relation of the creditor's attorney to the process under which such a sale is made, and his power by reason of that relation, to injuriously affect the interest of the debtor, so great and direct that sound policy and good morals require that such a purchase shall be set aside, when sought by the debtor, in every case upon the return of the purchase money paid with interest, unless it is made to appear that the sale was fairly made, and that the property brought its fair value.

The inadequacy of price, in this case, is manifest, and it has been said in many cases where this is true, that slight additional circumstances will justify the inference that in a legal sense the sale is fraudulent.

The circumstances in this case we deem sufficient.

It is most probably true, that, in fact, the appellant was influenced by no motive which in morals would be deemed fraudulent — that zeal to promote the interest of his client was the moving cause which influenced his action in causing the sale to be made as it was, but his good intentions cannot entitle him to hold that which he ought not to have bought, and for which he has not paid an adequate price.

The judgment of the court below is correct and is affirmed.

AFFIRMED.

[Opinion delivered June 12, 1885.]