PETER GUINAN, Appellant, v. M. S. C. DONNELL et al.

In Banc, February 22, 1907.*

1. APPEAL: Equity Suit: Record Errors. Where error is apparent upon the record proper in a suit in equity, the Supreme Court will modify the judgment or decree, or reverse it and remand the cause with directions, or will render such judgment as the facts require.

2. ————: ————: ————: Finding of Facts: Review. Where no bill of exceptions was filed, there is nothing before the Supreme Court for review except the record proper, although there was a finding of facts by the chancellor.

3. ————: ————: ————: Practice. The Supreme Court is not bound by the findings of the chancellor in a suit in equity, either as to ultimate facts or conclusions of law, but if the whole of the evidence is not brought up on appeal, the judgment is presumed to be correct as to all issues in the case, and it devolves upon appellant to show that it is not correct.

4. SHERIFF'S SALE: Inadequacy of Price. A sheriff's sale under execution of land worth $40,000 for $1,085 should be set aside because of inadequacy of consideration alone. It would be difficult to conceive of a sale of land under execution that would be more unconscionable.

Note.—Decided December 18, 1906. Motion for rehearing filed. Motion overruled February 22, 1907.

5. ——: ——: **In Collusion with Debtor's Attorney.** Where the purchaser at a sheriff's sale entered into a written agreement with the judgment debtor's attorney, who had acted for the debtor against the procurement of the judgments and had already been fully paid for his services, that he would procure the assignment of the judgments to himself, and that the attorney was to collect the judgments and was to have one-half of any amount realized on said judgments and one-half of any property bought by said purchaser at any sale under said judgments, and said purchaser caused said judgments to be assigned to himself and at the sheriff's sale bought in the property, the action of the attorney was fraudulent as to his client, and the purchaser is chargeable with the fraud, and the sale, when considered in connection with the inadequacy of price, should be set aside.

6. ——: **Attorney and Client: Improper Advantage.** An attorney is not at liberty to violate the professional confidence reposed in him by his client the moment that relation ceases to exist; nor is it necessary for a client seeking to avoid a sheriff's sale made in pursuance to an agreement between the purchaser and attorney who defended the suits that resulted in judgments against the client, to show that an improper advantage has been gained over him. The attorney is forbidden to purchase an interest in the thing in controversy, in opposition to the title of his client, during the litigation concerning the same, because it subjects him to the temptation to be unfaithful to his client.

7. ——: **Purchaser for Himself and Debtor's Attorney: Express Trust.** Where the attorney knew at the time the lands were sold that no man of ordinary intelligence would be likely to bid on them, because of the numerous judgments that had been rendered against them and which he had as attorney for the judgment debtor opposed, and because of *lis pendens* which he had caused to be filed, and the purchaser bought them in pursuance to an agreement with the attorney that the attorney was to have a half interest therein, the purchaser holds one-half of whatever interest he acquired, by reason of his purchase under those judgments and that agreement, for the attorney, and is, therefore, the trustee of an express trust, and is as much bound by the unfaithful acts and conduct of the attorney towards his client as he would be had the purchase been made in their joint names. And a court of equity will not set aside a prior conveyance by the judgment debtor to his son, as being in fraud of said purchaser, but on the said debtor's cross-bill will cancel the sheriff's sale.

8. ———: **Purchaser.** A purchaser at a sheriff's sale under execution buys at his peril.

9. ———: **Set Aside: Refunding Bid.** Where the sheriff's sale is set aside as being fraudulent, the purchaser knowing all about the fraud and not being misled into making the purchase by any act or misconduct of the judgment debtor, and the sale resulting in no benefit to him, he should not be required to pay to the purchaser the amount by him bid for the property. The rule that those who ask equity must do equity does not require the judgment debtor in such case to refund the amount of the purchaser's bid—which in this case was simply credited on the judgment, which plaintiff had acquired by assignment.

10. ———: ———: ———: **Modifying Judgment at Subsequent Term.** Where a motion for a new trial has been filed and continued to a subsequent term, whether filed by respondent or appellant, the trial court at such subsequent term may, upon motion of respondent, modify the judgment so as to eliminate a requirement that the judgment debtor refund to the purchaser at the fraudulent sheriff's sale the amount of the purchaser's bid. All the parties being present, the whole matter was still in the breast of the court.

11. **APPELLATE PRACTICE: Equity Suit: Finding of Chancellor.** The judgment of the trial court is presumably correct, and it devolves on the party assailing it to show something more than the mere fact that the findings of the chancellor do not sustain the judgment. That can be done only by bringing before the appellate court by bill of exceptions all the evidence in the case. The appellate court is not bound by the chancellor's findings, but it will not review them unless all the evidence is brought up. Nor will it hold that those findings do not authorize the judgment.

12. **SHERIFF'S SALE: Fraudulent Conveyance: Homestead.** Plaintiff bought defendant's land at a fraudulent sheriff's sale, and brings suit to have set aside a deed from defendant to his son, made without consideration, and plaintiff contends that that deed was clearly fraudulent and should be set aside, notwithstanding the sheriff's sale under which he claims was fraudulent. *Held*, that, as the land sold embraced defendant's homestead, his deed to his son cannot be set aside, on plaintiff's request, whether fraudulent or not.

13. ———: ———: ———: **Two Homesteads.** When one set of creditors under execution have caused defendant's homestead to be set out from a large tract of land, and sold the remainder, another creditor cannot levy on the same land and have the

sheriff set off another homestead therein, and sell the balance, including the part set off in the former proceeding, as a homestead. A homestead once set off to a debtor remains his homestead, and cannot be sold under a subsequent execution, although it should increase in value above the amount allowed by law, unless the homestead right is again first adjusted.

14. **HOMESTEAD: Once set off: Subsequent Claim.** Where a homestead under one execution has been set off, it is not necessary, when another execution under another judgment is issued, for the debtor to claim homestead in the land already set off to him as a homestead.

15. ————: **In Land Fraudulently Conveyed.** A defendant in an execution may claim a homestead in property he has conveyed, even though the conveyance was made for the purpose of defrauding his creditors.

Appeal from Johnson Circuit Court.—*Hon. Wm. L. Jarrott*, Judge.

AFFIRMED.

*William C. Forsee* and *Samuel P. Forsee* for appellant.

(1) (a) The deeds were purely voluntary. The taking of notes for the entire consideration is an almost conclusive badge of fraud, as ''bona fide sales of real estate are never made in such manner.'' Evans v. Bales, 168 Mo. 681; State to use v. O'Neil, 151 Mo. 84; Patten v. Casey, 57 Mo. 118; Bohannon v. Combs, 79 Mo. 305; Potter v. McDonnell, 31 Mo. 62; White v. McPheeters, 75 Mo. 286. (b) The lands conveyed to the son were the only unencumbered lands the debtor owned. A conveyance under such circumstances is presumptively fraudulent. Snyder v. Free, 114 Mo. 372. ''A voluntary deed to a considerable portion of his property by an embarrassed debtor unable to pay his debts as they mature, and who is being pressed for payments he cannot meet, is fraudulent as to existing creditors, regardless of the intent with which it was made.'' Sloan v. Torry, 78 Mo. 623; Shaw v. Tracy, 83 Mo.

224; Lionberger v. Baker, 88 Mo. 447; Society v. Branch, 120 Mo. 226; Hurley v. Taylor, 78 Mo. 238; Walsh v. Ketcham, 84 Mo. 427; Frank v. Caruthers, 108 Mo. 569. (2) Unquestionably Mrs. Wagner could have enforced her judgment for $2,357.75 for balance due her on her loan by a levy upon and sale of the land in controversy. Guinan, by his purchase thereof, acquired all the rights she had. Sec. 3745, R. S. 1899; Lionberger v. Baker, 14 Mo. App. 353, 88 Mo. 447; Burns v. Bangert, 16 Mo. App. 22; Wilson v. Railroad, 120 Mo. 45; State ex rel. v. Hoshaw, 98 Mo. 358; Bradley v. Heffernan, 156 Mo. 600; Burgess v. Cave, 52 Mo. 43; Rinehart v. Long, 95 Mo. 396. The finding of facts shows that "Mr. Guinan bought these judgments from Mrs. Wagner, and they were assigned to him March 18, 1900." He had been a surety on the $500 bond, but he had no connection whatever with the judgment for $2,357.75 under which the lands were sold. He was neither an agent nor an attorney of or for Donnell; he owed him no duty; he did not hold himself out in the purchase of the judgment or of the lands as being an agent or friend of Donnell, nor ask or obtain any deduction on account of such claim. He purchased the judgment in proper person, and not through another. Under these circumstances, it matters not how proper or improper may have been the conduct of any other person, his right to purchase and to enforce the judgment was unquestionable. Learned v. Haley, 34 Cal. 608; Weill v. Reiss, 167 Mo. 133; Smith v. Tyler, 57 Mo. App. 673; Flynn v. Neosho, 114 Mo. 567. Defendants' claim that Guinan purchased "with notice," in "bad faith," etc., is based upon a misconception. The question of "notice," good or bad "faith," etc., only arises where there is some defect in the title or the position of the seller. Weill v. Reiss, 167 Mo. 133. The purchase of the judgment by Guinan being an act within his legal and equitable rights, it is immaterial what

his motives were.  Bank v. Brown, 165 Mo. 38; Sammons v. O'Neil, 60 Mo. App. 540; Cooley on Torts, 688, 830; Iron Co. v. Uhler, 75 Pa. St. 467; Bancroft. v. Tayntor, 68 Vt. 219.  The fact that Guinan employed Forsee to "collect these judgments," and that under that contract it might become possible for Forsee to obtain an interest in the Donnell lands, is not the crux of this controversy, nor in any sense a vital or even a material point.  Smith v. Boyd, 162 Mo. 157; Hyam's Adm. v. Herndon, 36 La. Ann. 879; Lipscomb v. Adams, 91 S. W. 1046.  The question here involved is not whether Mr. Forsee could have bought the lands, but, rather, whether Guinan was incapacitated to buy the judgment, and whether in fact he did buy it.  The lands figure in the transaction merely as an incident.  If Donnell had paid the debt, even after execution had issued, the lands would not have been sold.  The whole point of inquiry is as to the right of Guinan to buy the judgment.  The judgment itself conferred no right upon either Guinan or Forsee to the lands, nor any interest therein.  Indeed, the contract between Forsee and Guinan vested in Forsee no interest in the judgment. Jordan v. Davis, 172 Mo. 599; Sawles v. Bank, 130 Fed. 1009; Bradley v. Heffernan, 156 Mo. 660; Rinehart v. Long, 95 Mo. 396; Hendrix v. Evans, 94 N. W. 853; 57 Cent. Law J. 298.  (3) There is a line of cases holding that an attorney who has been consulted about a title to land, and thereby ascertains the existence of an outstanding, or adverse, or paramount title, cannot purchase such adverse, outstanding or paramount title and hold it to the injury of his client, provided that the client promptly elects to treat the attorney as his trustee, and refunds what the attorney. has expended, etc. Ward v. Brown, 87 Mo. 468; Davis v. Kline, 96 Mo. 401; Eoff v. Irvine, 108 Mo. 378; Wilber v. Robinson, 29 Mo. App. 157.  This line of cases is much relied upon by respondents.  But the principle is inapplicable, because no attorney is shown by this record to have

bought any outstanding, adverse or paramount title. What occurred here was the purchase, by one who had a right to buy, of a judgment against the debtor, under which judgment the debtor's own title was sold, and purchased by the judgment creditor. Ward v. Brown, 87 Mo. 468. Assuming, for argument, that Guinan by his purchase of the judgment occupied such a position as entitled Donnell to elect to hold him as trustee, still, is it possible that Donnell could sit supinely by without paying or offering to pay any part of the amount Guinan paid for the judgment until after a sale occurred, and then defeat the sale? Stewart v. Perkins, 110 Mo. 670. (4) An attorney may buy a judgment against his former client under circumstances such as these. The authority of an attorney, especially where he represents the defendant, ceases with the judgment. Without a new retainer or fresh authority he can take no further step in the case. Hillegrass v. Bender, 78 Ind. 225; Richardson v. Talbot, 5 Ky. 382; Adams v. Bank, 23 How. Pr. 45; Graves v. Hawley, 50 Fed. 319; Brown v. Arnold, 127 Fed. 387. The foregoing is unquestionably true where, as here, the defendant instructs his attorney "to make no further defense," and to allow a judgment to go by default. A judgment is not a litigious claim. All the matters in controversy are determined by and merged in a money judgment. Warren v. Payne, 3 Barb. Ch. 630; Marshall v. McRae, 2 La. Ann. 79; Micken v. Perrin, 18 How. (U. S.) 310; Denton v. Wilcox, 2 La. Ann. 60; Taylor v. Barker, 30 S. C. 248; Austin v. Chambers, 6 Clark & Fin. 1; Brotherson v. Consalus, 26 How. Pr. 215; Devinney v. Norris, 8 Watts 314; Taylor v. Boardman, 24 Mich. 287; Weeks on Attorneys, sec. 268, note. "Third persons cannot set up the right of the client to treat the attorney as a trustee." Estes v. Boothe, 20 Ark. 583; Leach v. Fowler, 22 Ark. 143; Wade v. Pettibone, 11 Ohio 59; Atwood v. Mansfield, 59 Ill. 496; Kay v. Whittaker, 44 N. Y. 577; Giddings v. Eastman, 5 Paige 561. (5) "The sheriff

notified Donnell of the levy and requested him in writing to designate and choose his homestead. Donnell did not comply with this request. The sheriff selected appraisers who set off a homestead to Donnell out of the real estate which he did not own and in which he had no interest. Mr. Forsee, who was acting as the attorney for Mr. Guinan, and under whose directions the sheriff was acting, knew that Donnell did not own or claim any portion of the real estate set apart to him as a homestead. A homestead had formerly been set apart to Donnell out of the real estate he did own. (When execution was issued on the judgment in favor of the bank.) This fact was well known to Mr. Forsee when, as Guinan's attorney, he caused this same land to be sold under the Wagner judgment. The sheriff duly advertised the real estate in controversy. The sale was made May 19, 1900. Donnell was present, had a friend bid on the property, and made no public objection to the sale.'' However, assuming that he was entitled to a homestead, we submit, 1. That one was set off to him in strict compliance with every requirement of the statutes; and, 2. If he was dissatisfied with the action of the sheriff in this particular he should have filed his objections thereto in the Clay Circuit Court, whence the execution issued, and not having done so, he waived any objection to such action. St. Louis Bldg. Assn. v. Howard, 150 Mo. 445; Barton v. Walker, 165 Mo. 30; Rouse v. Caton, 168 Mo. 288; Stanley v. Baker, 75 Mo. 60; Feurt v. Caster, 73 S. W. 576; Freeman on Ex., sec. 250; Macke v. Byrd, 131 Mo. 682. It does not follow that, because a homestead had been set aside to Donnell under levies prior to Guinan's, the land so set aside could not under any circumstances be again appraised and reached. Beckner v. Rule, 91 Mo. 62; Freeman on Ex., sec. 250. ''The appraisement or allotment made in proceedings to subject the homestead to execution is binding on all parties thereto, unless assailed or vacated in due time in the court wherein the

proceedings took place. Neither the creditor nor the debtor can, by any collateral attack, avoid such allotment or appraisement or the sales made under execution by virtue thereof.'' Freeman on Ex., sec. 250; Meyer v. Nickerson, 101 Mo. 184; Lallement v. Detert, 96 Mo. 182; Creath v. Dale, 69 Mo. 41; Meyer v. Nickerson, 100 Mo. 599; Schaeffer v. Beldsmeyer, 9 Mo. App. 438; Straat v. Rinkle, 16 Mo. App. 115; Thompson on Homesteads, sec. 667; Barney v. Leeds, 54 N. H. 142; Fletcher v. Bank, 37 N. H. 369; Thrasher v. Betts, 53 Ga. 407; Spoon v. Reed, 78 N. C. 245; Guntley v. Staed, 77 Mo. App. 164; Garrett v. Wagner, 125 Mo. 450; Hawland v. Railroad, 134 Mo. 474. (6) The price paid by Guinan was not, under the circumstances, an inadequate one. But, if it was, it is upon this record too clear for serious argument that if these lands sold for an inadequate price under the Wagner judgment, it was because of Donnell's fraudulent manipulations, and of his unpaid debts. For these reasons he is estopped to make this objection. Rankin v. Harper, 23 Mo. 586; Woodward v. Mastin, 106 Mo. 361; Rinehart v. Long, 95 Mo. 396; Boyer v. Tucker, 70 Mo. 456. (7) The action of Donnell was not merely negative. The court finds that he ''had a friend bid on the property,'' *i. e.,* he requested or induced or caused his friend to do so. This was equivalent to an actual approval of the sale, and calculated to cause any bidder to feel that he, Donnell, would not contest the same. He thereby wiped out and got the benefit of $1,085 of Guinan's money. Under these circumstances it would be unjust to allow him now to say that the sale was invalid. 2 Herman on Est., sec. 1059; Gutzwiller v. Lackman, 23 Mo. 168; Rice v. Bunce, Admr., 49 Mo. 231; Slagle v. Murdock, 65 Mo. 522; Austin v. Loring, 63 Mo. 19; Longworth v. Aslin, 106 Mo. 155; Manning v. K. & T. Coal Co., 181 Mo. 359; Epley v. Witherow, 7 Watts 163; Carr v. Wallace, 7 Watts 394; May v. Deer, 4 J. J. Marsh. 585; Wood v. Colvin, 2 Hill 566; Sanders v. Ballance, 2

Jones Eq. 322; Moffitt v. Adams, 60 Iowa 44; Miles v. Lefi, 60 Iowa 168; Willard v. Whipple, 40 Vt. 219; Spragg v. Shriver, 23 Pa. St. 282; Mariner v. Coon, 16 Wis. 465; Gillett v. Edgar, 22 Iowa 293; Desplate v. St. Martin, 17 La. Ann. 91; Mitchell v. Freedley, 10 Pa. St. 208; Maple v. Kussart, 53 Pa. St. 352; Williard v. Williard, 56 Pa. St. 128; Mock v. Stuckey, 96 Ga. 187; Moody's Heirs v. Miller, 72 Tex. 635. (8) Donnell's pleading claims that the purchase of the Wagner judgments by Guinan in March, 1900, operated a satisfaction or extinguishment of them. If so, then it must have been a satisfaction "otherwise than by execution." Hence, he should have followed the method pointed out by statute. R. S. 1899, secs. 3730 to 3735; Freeman on Ex., sec. 436; 1 Black on Judg., secs. 299, 303, 334; Freeman on Judg., sec. 480; Slicker v. Gordon, 74 Mo. 534; Wilkerson v. Sampson, 56 Mo. App. 276.

*Edward P. Garnett* for respondents.

(1) It is well-settled law that "in equity cases appellate courts will review the testimony and are not bound by the findings of the chancellor, either as to ultimate facts or his conclusions of law, and, hence, it has been uniformly ruled by this court in equity cases that the whole of the evidence must be brought up on appeal and a rule of this court to that effect has long been in force." The prevailing party has the right to have the whole evidence before this court before his decree is disturbed, as he might from that evidence convince this court that he was entitled to his decree from other facts not found by the chancellor. Especially is this true where, as in this case, there is a general finding of the issues in his favor. State ex rel. v. Jarrott, 183 Mo. 204; State ex rel. v. Gibson, 184 Mo. 490; State ex rel. v. Gibson, 187 Mo. 536; Robinson v. McCune, 128 Mo. 577; Jorden v. Buschmeyer, 97 Mo. 94; Lawless v. Law-

less, 47 Mo. App. 523; Hoeller v. Haffner, 155 Mo. 597.
(2) ''The lower court, in consequence of the motions
for new trial filed and continued to the subsequent
term, had a perfect right to modify the former finding
and decree, as it did do, as all of the parties were pres-
ent and the whole matter was still in the breast of the
court.'' McGarry v. Wall, 122 Mo. 620; Walter v.
Scofield, 167 Mo. 537.   (3)   Guinan bid in the lands in
question at sheriff's sale under execution issued on a
certain Wagner judgment, in trust for himself and W.
C. Forsee; said Forsee was employed by Donnell to de-
fend the suits which culminated in the Wagner judg-
ments, and advised him in regard to the effects of the
judgments after they were rendered, and therefore the
said Forsee could not, either directly or indirectly, ac-
quire any title to any of Donnell's land at sheriff's sale
under an execution issued on said Wagner judgments,
There is no doubt in regard to this proposition. Be-
sides, Forsee advised Donnell as to the validity of the
deed to J. L. Donnell and represented him in upholding
its validity in the Carroll county attachment suit, and
cannot now shift to the other side and attack the val-
idity of the deed.   He cannot tear down the structure
he has been employed to support.   So that Forsee is
not only precluded from acquiring title under the
Wagner execution, but is precluded from attacking the
validity of the deed to J. L. Donnell.   Schroeder v.
Young, 161 U. S. 344; Graffin v. Burgess, 117 U. S. 186;
Eoff v. Irvine, 108 Mo. 378; Baker v. Humphrey, 101 U.
S. 494; Davis v. Kline, 96 Mo. 401; Weeks, secs. 273,
277; Downard v. Hadley, 116 Ind. 131; Henry v. Rai-
man, 25 Pa. St. 354; Harper v. Perry, 26 Iowa 57; Cun-
ningham v. Jones, 37 Kan. 477; Wright v. Walker, 30
Ark. 44; Sutherland v. Reeve, 151 Ill. 384; Howell v.
McCreery, 37 Ky. 388.   (4) The execution under which
the lands in question were sold, is absolutely void for
the following reasons:   (a)   The execution was issued
for a greater amount than was due on the judgment,

the amount of the large judgment included the small judgment on the bond which had been extinguished, and the amount of small judgment should have been credited on the large judgment under which the execution was issued; besides, Guinan as surety was only entitled to recover from Donnell the amount which he had paid for the judgments. Any attempt to collect more was extortion pure and simple and rendered the execution void. (b) The clerk did not, "before delivering any execution . . . endorse thereon the debt, damages and costs . . . to be recovered" as required by law, and for that reason also the execution was and is void. Secs. 3157, 3178, R. S. 1899; Schroeder v. Young, 161 U. S. 341; Hastings v. Johnson, 1 Neb. 615; Warder v. Millard, 76 Tenn. (8 Lea) 582; Meadows v. Earles, 80 Tenn. (12 Lea) 299; 2 Freeman on Executions, sec. 42; Maxwell v. King, 3 Yerg. 460; Wright v. Nostrand, 15 Jones & S. 441; Hopkins v. Waterhouse, 10 Tenn. 230; Walker v. Marshall, 10 N. C. 1; Collins v. McLeod, 30 N. C. 221; Monaghan v. Monaghan, 25 Ohio. St. 325; Glidden v. Chase, 35 Me. 90; Davy v. Long, 67 Ky. 574; Prescott v. Prescott, 62 Me. 428. (5) The sheriff's sale was void for the reason that the lands sold embraced Donnell's homestead theretofore set off to him in the Bank case, and the alleged homestead set off to him in this case was in lands which he did not own and had never owned. Bank v. Gutherie, 127 Mo. 189; Rattiff v. Graves, 132 Mo. 76; Macke v. Byrd, 131 Mo. 690; Vogel v. Montgomery, 54 Mo. 584; New Madrid Bank v. Brown, 165 Mo. 32; Rose v. Smith, 167 Mo. 81; Creech v. Childers, 156 Mo. 338; Broyles v. Cox, 153 Mo. 242; Mills v. Mills, 141 Mo. 195; Bealy v. Blake, 153 Mo. 657; Peake v. Cameron, 102 Mo. 568; Grimes v. Portman, 99 Mo. 229; Keene v. Wyatt, 160 Mo. 31; King v. King, 155 Mo. 406; Chance v. Jennings, 159 Mo. 544. (6) The consideration bid, $1,085, for over $40,000 worth of property was so grossly inadequate as to shock the conscience of a court of equity. And when

this is the case only very slight circumstances author-
ize a court of equity to set aside a sale. Busy v. Har-
den, 41 Ky. 407; Smith v. Thompson's Heirs, 46 Ky.
305; Byers v. Suget, 60 U. S. (19 How.) 303; Schroeder
v. Young, 161 U. S. 340; Railroad v. Brown, 43 Mo.
297; Holden v. Vaughn, 64 Mo. 590; Mitchell v. Jones,
50 Mo. 438; Davis v. McCann, 143 Mo. 172.

BURGESS, J.—This is a suit in equity, the pur-
pose of which is to set aside certain deeds from the de-
fendant M. S. C. Donnell and wife to James L. Donnell,
conveying to him certain lands in Jackson county, and
several deeds of trust executed by said James L. Don-
nell to defendant Hall as trustee, and that the notes
therein described, as against plaintiff, be held null and
void upon the ground that they were fraudulent as to
the creditors of M. S. C. Donnell; also that plaintiff be
placed in the possession of said lands.

The Donnells filed an answer and cross-bill in
which they denied specifically the charge that the deed
and deed of trust executed by M. S. C. Donnell and J.
L. Donnell, respectively, were fraudulent and void. The
answer and cross-bill state that after the conveyances
were made "the said M. S. C. Donnell was seized of a
very large and valuable estate, consisting of real and
personal property, which was not included in said con-
veyances," and that he was not rendered insolvent by
said conveyances but had property left in his own
name, the value of which was largely in excess of any
debts due and owing by him; that the Wagner note was
secured by real estate worth twice the amount of said
note at the time, and that the conveyances were made
in good faith. It also denies the statement of the peti-
tion as to homestead being set apart to Donnell prev-
ious to the sheriff's sale. It further denies that M. S.
C. Donnell was insolvent when he made the convey-
ances of May 20, 1898, for the benefit of his creditors,
and states that said conveyance was made "at the sug-

gestion and under the advice of one Wm. C. Forsee who was then defendant's attorney, and who now represents the plaintiff," and that for reasons thereinafter stated plaintiff is estopped from calling in question said conveyances.

The answer and cross-bill then proceeds as follows:

"For further answer and cross-bill, these defendants complain of plaintiff, and say, that in the year 1892 the defendant M. S. C. Donnell borrowed of one Anna B. Wagner the sum of $5,000, and secured the same by deed of trust on certain real estate in Kansas City, Missouri, worth at least double that amount; that during the years of 1896 and 1897 there was a great financial panic and the price of real estate became very much depressed; that during such panic and depression said defendant being unable to pay said note, said Anna B. Wagner had said real estate sold under said deed of trust and bid the same in for about the sum of $3,500, the net proceeds of which were credited on said note; that said M. S. C. Donnell, realizing that said real estate had been sacrificed and desiring to redeem the same, executed and delivered to said Wagner his bond in the penal sum of $500 conditioned that he would pay the interest on said $5,000 note and all waste in case he should fail to redeem said real estate from said foreclosure within the time required by law; that plaintiff signed said bond with said defendant and became his surety for its faithful performance and for the payment of said interest on said Wagner note; that said Wagner thereafter sued said defendant Donnell for a balance which she claimed was due her for the amount of said note and interest and also sued defendant M. S. C. Donnell and said plaintiff on said bond; that said M. S. C. Donnell thereupon employed one William C. Forsee, attorney-at-law, a member of the Jackson County Bar, to defend both of said suits, and that said Forsee accepted said employment and charged the said

M. S. C. Donnell the sum of $100 for his services in that behalf and pretended to represent said Donnell therein, but permitted judgment to be taken by default in both of said cases without making any defense thereto; that said judgments were rendered in November, 1899, and thereafter said M. S. C. Donnell consulted and advised with said Forsee as to the probable effects of said judgments and the best course to pursue in the premises, for which he charged said Donnell the further sum of $30; that during said months of November, and December, 1899, and for many years prior thereto, the said Forsee had been the attorney and counsellor and the confidential legal adviser of these defendants and in that relation had obtained an intimate knowledge of the condition of the title to all the properties owned by these defendants and of all the plans, purposes, litigations and liabilities of the said M. S. C. Donnell and Catherine E. Donnell; that plaintiff Guinan well knowing the premises, on or about the —— day of November, 1899, unlawfully and fraudulently conspired, confederated and combined with the said Wm. C. Forsee to cheat and defraud these defendants and under the form and guise of law to extort from them large sums of money to which they were not entitled and to use said Wagner judgments for the unlawful purpose of obtaining title to all of the property owned by these defendants; that said plaintiff Guinan, recognizing his obligations as surety for said Donnell on said bond for the payment of the interest on said Wagner note and which culminated in the Wagner judgments against plaintiff and said M. S. C. Donnell, paid to the said Anna B. Wagner about the sum of $400, by which he extinguished the claim of said Wagner against him as surety for said Donnell and by which said judgments were extinguished and satisfied; that both of said Wagner judgments grew out of the same transaction, in which said Guinan occupied toward said M. S. C. Donnell the relation of surety; that said $400 was paid in

one transaction and in a lump sum and was paid by said Guinan as surety aforesaid; that said M. S. C. Donnell was, therefore, entitled to have said Wagner judgments extinguished and cancelled upon his repayment to the said Guinan of said $400 and interest and upon reimbursing him the amounts expended by him as surety aforesaid, and the said Donnell was only indebted to said Guinan on account of said payment of such judgments in the amount paid by him as aforesaid; that under the counsel and advice of said Forsee and for the benefit of himself and said Forsee, and for the purpose of carrying out their secret conspiracy, the said Guinan procured an assignment to himself to the use of himself and said Forsee the said Wagner judgments; that nothwithstanding that said Guinan was only entitled to recover from the said M. S. C. Donnell the amount paid by him to the said Wagner as surety for the payment of said judgment, he entered into said unlawful conspiracy and secret agreement with said Forsee by the terms of which he, the said Guinan, and he, the said Forsee, were to divide equally between themselves any sum of money which they could by any means or method extort from the said M. S. C. Donnell in excess of said $400 paid for said judgment, and by the terms of which fraudulent and unlawful agreement the said Guinan and Forsee are to share alike in the profits of their fraud, and are to divide equally between themselves and become tenants in common of all the lands and properties of which these defendants might be despoiled; that under the terms of said unlawful secret agreement the said Forsee consented to assist said Guinan in collecting and extorting from said Donnell large sums of money not due by said defendant to said Guinan; that in assisting said Guinan said Forsee agreed to use all of the knowledge and information which he had acquired from the defendants while acting for them as their attorney as aforesaid; that said Guinan was particularly induced to enter into said fraudulent agree-

ment by reason of the representations of the said For-
see, that he, the said Forsee, by means of the unlawful
use of the knowledge of the affairs of these defendants
obtained by him during his employment as their attor-
ney, would be able to so direct the issue of an execu-
tion on said Wagner judgments and so direct the en-
forcement of said executions as to extort from the de-
fendants large sums of money not due to said Guinan
on said judgments, and to obtain title to all of defend-
ants' lands; that under and by virtue of the terms of
said unlawful agreement the said Wm. C. Forsee is
equally interested with plaintiff herein in all of his pre-
tended claims set up in his petition and is a necessary
party to this suit and to a complete determination to
the controversy in issue and should be made a party to
this suit. These defendants further say that in pur-
suance of said unlawful and fraudulent conspiracy and
agreement, the said Guinan and Forsee, on or about
March 6, 1900, procured said Wagner judgments to be
assigned to said Guinan in secret trust for himself and
said Forsee, and on March 18, 1900, caused a pretended
execution to be issued by the clerk of the circuit court
of Clay county on said judgments for the full face value
thereof, although they well knew that said Guinan was
only entitled to recover of said Donnell thereon the said
sum of $400 paid by him as surety aforesaid; that said
Forsee and Guinan in manner and form and for pur-
poses aforesaid caused the clerk of said circuit court
to endorse on said executions as the amount to be col-
lected of and from said defendant Donnell the full face
value and amount of said judgments, instead of endors-
ing thereon the debt, damages and costs, or damages
and costs to be recovered as provided by law, which
rendered said execution null and void; that thereafter
said Guinan and Forsee, acting as aforesaid, for the
purposes aforesaid, caused said pretended execution
to be delivered to the sheriff of Jackson county, Mis-
souri, on March 22, 1900, and caused said sheriff to levy

the same for said fraudulent amount of the full face
value of said judgments on a farm of the defendants,
consisting of four hundred acres of land of the value
of over forty thousand dollars, in which was included
the homestead of defendants theretofore set off to them
in another proceeding, and to make a pretended sale
thereof to said Guinan in secret trust for himself and
said Forsee, and to make to said Guinan his pretended
sheriff's deed under which the plaintiff is claiming title
to said real estate, it being the same described in plain-
tiff's petition; that prior to said pretended levy and
sale under said pretended Wagner execution, plaintiff
Guinan, assisted by the said Forsee, were active par-
ticipants with other creditors of the said Donnell in ty-
ing up the said lands in litigation and in causing *lis
pendens* to be filed in the recorder's office of said coun-
ty, notifying the public that said lands were in litiga-
tion and thus preventing any competition at said pre-
tended sheriff's sale in bidding on said lands, and so
beclouded the title to said lands as to render the same
wholly unmarketable; that the said lands had been
theretofore sold by the sheriff of said Jackson county
under an execution issued by the circuit clerk of said
county in favor of the Citizens National Bank v. said
M. S. C. Donnell, and the said Forsee was employed by
said Donnell to defend the suit which culminated in the
judgment under which said execution was issued and
represented said Donnell in resisting the sale under
said execution and in so doing the said Forsee, acting
as the attorney for said Donnell, became acquainted
with facts not shown of record which he claimed would
defeat said sale; that said Citizens National Bank had
also prior to the rendition of the said Wagner judg-
ments, sued out an attachment in another cause in the
said circuit court, under which the said lands had been
attached and the said Forsee also represented the said
Donnell, who was defendant therein, and in his behalf
as his attorney defended said attachment suit, and in

so doing obtained in confidential relation such facts as he considered would ultimately defeat said attachment; that said attachment was levied on said real estate prior to the rendition of the said Wagner judgments and was ostensibly a prior lien of record to said judgments, so that when the said sheriff levied his pretended execution on the lands described in plaintiff's petition under the said Wagner execution, the record title to the land thus levied upon were so beclouded that there were no bidders at his pretended sale under said execution, and the said lands, amounting to over 400 acres and valued at more than $40,000, was bid in by the plaintiff in secret trust for himself and the said Forsee in one body and lump at the grossly inadequate consideration of $1,085, no part of which sum was ever paid by the plaintiff, and said sheriff's deed obtained without any consideration being paid therefor.

"Defendants further say that, while said pretended sheriff's deed was taken in the name of plaintiff Guinan, there was a secret agreement between said Guinan and Forsee that he, the said Forsee, should be entitled to an undivided one-half interest in the title pretended to be conveyed by said sheriff's deed; that said Forsee having as aforesaid been employed to represent the defendant in the suit which culminated in said Wagner judgments as aforesaid and having been the confidential legal adviser of the defendant in said judgments after the same were rendered, was and is estopped and precluded from obtaining any title to any real estate or other property of said defendants under any execution sale made thereunder, either in his own name directly or in the name of said plaintiff Guinan or any one else, adverse to the defendant Donnell in said judgment.

"Wherefore these defendants say that said judgments were fully satisfied and paid before said executions were issued, that by reason of the premises the executions issued on said Wagner judgments as de-

scribed in plaintiff's petition, the pretended levy and sale thereunder, and the pretended conveyance by sheriff's deed to plaintiff of the property described in his petition, by reason of the premises, are each and every utterly and wholly null and void, and that said pretended sheriff's deed conveyed no title to the plaintiff, and defendants therefore pray that said pretended sheriff's deed be cancelled, annulled, set aside, and for naught held, and that same be removed as a cloud on the title to said land and that defendants may have such other general and further relief as to the court may seem just and proper in the premises and for costs.

"These defendants further answering say that the execution, levy and pretended sale and pretended conveyance by the sheriff under said Wagner judgments and executions, under which plaintiff claims title to the real estate described in his petition, are each and every null and void for the following reasons, that is to say, that prior to the levy of said execution and prior to the rendition of said Wagner judgments, the Citizens National Bank of Kansas City, Missouri, had obtained judgment against the said M. S. C. Donnell for the sum of about $18,406.79 in the circuit court of Jackson county, Missouri, in a certain cause No. 29,538 therein pending, upon which judgment and execution was issued directed to the sheriff of said county, who levied the same on all the lands described in plaintiff's petition; that the defendant M. S. C. Donnell was at that time and is now the head of a family, and had resided for more than ten years prior to said levy upon the lands described in said levy and in plaintiff's petition described, with his family, having acquired title to said lands by deeds filed of record and begun his residence upon the same long prior to the date of the incurring of the indebtedness to said bank which culminated in its said judgments, and long prior to the time of the incurring of the indebtedness which culminated in the said Wagner judgments; that said M. S. C. Donnell is now and

was at the time said executions were levied by the said
sheriff upon said lands under said judgments in favor
of said Citizens National Bank, entitled to a homestead
in the lands so levied upon the same, being the lands
described in plaintiff's petition; that said M. S. C. Don-
nell being so entitled to said homestead, the said sher-
iff of Jackson county, after making said levy, duly and
legally appointed commissioners to appraise and set
off to said Donnell his homestead in said lands, as the
law directs; that said commissioners after being duly
sworn and qualified as required by law did set off said
homestead in words and figures as follows, to-wit:

"November 29, 1898.

"We, the undersigned appraisers, appointed by the sheriff of
Jackson county, Missouri, to appraise the real estate and fix the
location and boundaries of the homestead of M. S. C. Donnell there-
in, which real estate is located in sections 20, 21 and 28, township
48, range 33 west, and is more particularly described in the return
of said sheriff indorsed in evidence of his levy, upon the execution
now in the hands of said sheriff in cause No. 29538, Citizens
National Bank of Kansas City v. M. S. C. Donnell, hereby make
return of our actions as such appraisers and say that, having first
taken the oath required by law, we proceeded to view the said
lands, and giving due consideration to the situation thereof, includ-
ing the portion thereof now occupied by said Donnell as a resi-
dence, do allot to him the following portions thereof as his home-
stead and fix the location and boundaries thereof as follows:
All of the east half of the southwest quarter of section 21, township
48, range 33, except ten acres heretofore sold by John F. Self and
wife to James McDonald by deed in Book B 22 at page 336 of
Jackson county records, also two-ninths interest undivided in the
east half of the southeast quarter of southeast quarter of section
20, and the undivided two ninths interest of the southwest quarter
of the southwest quarter of section 21, all of said land being in
township 48, range 33, of Jackson county, Missouri, together with
improvements thereon.

Ail as shown on the plat on the reverse side thereof.

NATHAN BOONE,
EDWARD C. ARN,
THOMAS C. LEA.

"And defendants say that said sheriff thereupon
released said tract so set apart to said Donnell as his

homestead from the levy under said execution, and sold the remainder of said lands levied on thereunder, and duly reported said sale, including the report of said appraisers setting apart said homestead, to the said circuit court, which report was in all things by the said circuit court duly and legally approved and confirmed, and the defendant M. S. C. Donnell's said homestead duly and legally established and confirmed by the action of said commissioners, the said sheriff and the said circuit court, and these defendants say that the said tract of land thus set off to said Donnell as his homestead became and was from that time hence and still remains the homestead of said M. S. C. Donnell and was not thereafter subject to attachment, levy, or sale under any execution by any of the creditors of the said Donnell; that the said lands embraced in said homestead were not subject to levy and sale under the said pretended executions issued on said Wagner judgments; that the lands described in plaintiff's petition and claimed by him under the levy and sale under the said pretended Wagner execution include and are a part of the homestead so established and set off to said Donnell; and the defendants say that the homestead pretended and attempted to be set off to the said M. S. C. Donnell under the levy under the pretended Wagner execution was not and could not become the homestead of said Donnell. Wherefore the defendants say that the pretended levy and sale under the said pretended executions issued on said Wagner judgments are null and void and that the pretended sheriff's deed made to the plaintiff thereunder is and was utterly void and conveyed to the plaintiff no title whatever to the lands described in his petition. Therefore the defendants pray that said pretended sheriff's deed made to the plaintiff and described in his petition as being dated July 8, 1900, and duly recorded in the recorder's office of Jackson county, Missouri, at Kansas City in book B 745 at page 57 and in the office of recorder of

deeds at Independence July 2, 1900, in book 223 at page 197, be cancelled, set aside, and for naught held and that the apparent legal title acquired by the plaintiff in the real estate described in his petition under said pretended deed be divested out of the plaintiff and vested in the defendants as their interests may appear on the final hearing hereof, and that defendants may have such other and further relief as to the court may seem just and proper and for costs.

"These defendants further say that the said plaintiff has been fully paid and reimbursed of all moneys and expenses incurred by him by reason of his suretyship as aforesaid and that the said M. S. C. Donnell is not indebted to the plaintiff in any sum whatsoever on account of said Wagner judgments or otherwise, and having fully answered these defendants ask for judgment against the plaintiff as prayed in the other counts hereof, and for costs and all proper relief."

The reply was a general denial to the new matter set up in the cross-bill.

Under the pleadings and the evidence "the court, being fully advised in the premises, doth find the issues for the defendants," and rendered a decree setting aside the sheriff's deed to plaintiff.

At the request of the plaintiff the court "filed herein his written findings of facts." These findings were copied in the decree.

By the terms of the decree the defendants were required to pay plaintiff $1,085, the amount of his bid at sheriff's sale. This was eliminated from the decree at the next term of the court on motion of defendants, which had been filed at the time the decree was rendered, and which is referred to in the order and judgment modifying the decree.

The record also recites that motions for new trial and in arrest, filed by plaintiff, were overruled. Plaintiff appealed June 30, 1903. No bill of exceptions was ever filed.

After the evidence was all in the court found the issues for defendants, and at the request of plaintiff made a finding of facts, which finding and the judgment and decree rendered are as follows:

"In February, 1892, M. S. C. Donnell borrowed $5,000 from Mrs. Wagner and secured the payment of the debt by a deed of trust conveying certain lots at Seventeenth and McGee streets in Kansas City. In April, 1896, he also executed one note for $20,000 and one note for $2,000 due the Citizens National Bank on demand. During the summer and fall the bank pressed Donnell for this debt and in December, 1896, placed the same in the hands of its attorneys who demanded payment. At this time Donnell owned a large amount of property, greatly in excess of his liabilities, and had it been judiciously managed would have fully paid all of his just debts. But at the time he made the deed to J. L. Donnell he was in embarrassed circumstances, and his creditors were pressing him for money. The land conveyed was all of the unencumbered real estate that he owned, and he testified that he made the conveyance in order to 'try to save something.' J. L. Donnell knew that his father owed the bank and that payment had been demanded. There was no money paid by J. L. Donnell. The consideration was expressed in notes for $41,000 secured by a deed of trust on the property. Two days after these deeds were executed the bank attached the property. The attachment was sustained in Carroll county, July 9, 1897. There were other suits instituted in Jackson county and judgments rendered against M. S. C. Donnell in favor of the bank. Donnell made a defense to all of these suits. In April, 1903, these judgments were reversed by the Supreme Court.

"In March, 1897, Mrs. Wagner foreclosed her deed of trust and bid in the property for less than the debt due her. Donnell, as principal, with Guinan as surety, gave Mrs. Wagner a redemption bond for the sum of

$500.   Mrs. Wagner thereafter sued Donnell for the balance due on her debt, and sued Guinan and Donnell on the $500 bond.   On November 9, 1899, she recovered judgment against M. S. C. Donnell for $2,357.75, and recovered judgment against Guinan and Donnell for $350.

"In July, 1897, M. S. C. Donnell employed Wm. C. Forsee as his attorney and counsel.   Mr. Forsee continued to act as such until December, 1899.   He had no business connection with Guinan until November, 1899. Mr. Forsee was Donnell's attorney in all of his litigation with the Citizens Bank, with Mrs. Wagner, and was consulted by Mr. Donnell in regard to the deeds executed to and received from J. L. Donnell.   During the time he acted as Mr. Donnell's attorney he became familiar with all of Mr. Donnell's business, the title to and the value of his property.

"The bank recovered judgment against Donnell, the land in controversy was sold by the sheriff and bought by the bank for $3,000, December, 1898.   This was the judgment reversed by the Supreme Court.   Mr. Forsee also represented Mr. Donnell in the suits brought by Mrs. Wagner.   These suits were taken to Clay county by change of venue.   Mr. Donnell told Mr. Forsee to make no further defense.   Judgment was rendered by default.   Motions to set aside the said judgments were filed and overruled.   Mr. Guinan bought these judgments from Mrs. Wagner, and they were assigned to him March 18, 1900.   He paid $400 for both judgments.   Both were bought in the same transaction; but Guinan claims that he paid $350 for the smaller judgment, and $50 for the larger one.

"Guinan on or about the time of the assignment of the judgments employed Forsee to collect these judgments, and by a written contract agreed to give him one-half of any amount realized on said judgments, and to hold for him one-half of any property bought by Guinan at any sale under said judgments.   Guinan

had an execution issued on the larger judgment, direct‑ ed to the sheriff of Jackson county, who levied upon the land in controversy, and, by a second levy, levied upon a tract of land that Donnell did not own. Mr. Forsee knew at the time that Donnell did not own the land de‑ scribed in the second levy. The execution was for the amount due on the judgment, but the amount of the debt, damages and costs to be recovered was not en‑ dorsed on the execution.

"The sheriff notified Donnell of the levy and re‑ quested him in writing to designate and choose his homestead. Donnell did not comply with this request. The sheriff selected appraisers who set off a homestead to Donnell out of the real estate which he did not own and in which he had no interest. Mr. Forsee, who was acting as the attorney for Mr. Guinan, and under whose directions the sheriff was acting, knew that Donnell did not own or claim any portion of the real estate set apart to him as a homestead. A homestead had for‑ merly been set apart to Donnell out of the real estate he did own. (When execution was issued on the judg‑ ment in favor of the bank.) This fact was well known to Mr. Forsee when, as Guinan's attorney, he caused this same land to be sold under the Wagner judgment. The sheriff duly advertised the real estate in contro‑ versy. The sale was made May 19, 1900. Donnell was present, had a friend bid on the property, and made no public objection to the sale. The land was sold to Gui‑ nan for $1,085, and a sheriff's deed was formally exe‑ cuted to him purporting to convey the title of M. S. C. Donnell to the real estate in controversy. There were apparent liens and encumbrances on the land at the time of the sale, as follows:—The deed in favor of J. L. Donnell, the deed of trust given by him, the judgment in favor of Ballingall, and the judgments in favor of the Citizens National Bank, all amounting to about $74,000. All of these claims and liens, except Ballin‑ gall's, were not real, but only apparent liens. All of

these liens have been eliminated by the judgment of our Supreme Court. The Ballingall judgment has been paid in full. Mr. Forsee was fully informed and knew all about the condition of these liens and encumbrances. During the two years that he acted as Donnell's attorney he received about $5,000 for his services. A large portion of this money was paid by him for his efforts to sustain the J. L. Donnell deeds, and to defeat the apparent liens of the Citizens National Bank. The plaintiff has received in cash from Mr. Donnell $1,200 on the judgments purchased from Mrs. Wagner; $133.35 was paid to the sheriff by Donnell on January 14, 1901, as credit on *alias* execution dated December 13, 1900.

"The court further finds that the consideration for which said sheriff's deed was executed was grossly inadequate; that it was less than three per cent of the real value of the land conveyed by said deed to Guinan.

"The court finds the facts to be as above set forth.

"The finding, judgment and decree of the court is that M. S. C. Donnell pay to Peter Guinan the sum of $1,085, with six per cent annual interest from May 19, 1900; that the sheriff's sale and sheriff's deed, executed to Peter Guinan, purporting to convey the land in controversy be set aside and for naught held."

"WM. L. JARROTT,

"Judge of the Circuit Court.

for Johnson county, Missouri."

"Wherefore, it is ordered, adjudged and decreed that the defendant, M. S. C. Donnell, pay to Peter Guinan the sum of one thousand and eighty-five dollars, with six per cent interest from May 19, 1900; and further ordered, adjudged and decreed that the sheriff's deed executed and delivered to the plaintiff on June 1, 1900, and recorded on June 8, 1900, in book B 745 at page 57 in the office of the recorder of deeds of Jackson county, Missouri, at Kansas City, and on the 2nd day of July, 1900, in book 223 at page 197 in the office

of said recorder of deeds at Independence, Missouri, be and the same is hereby cancelled, annulled, set aside and for naught held, provided defendant M. S. C. Donnell pay to plaintiff $1,085, with interest as aforesaid within six months from this date; and that the defendants recover their costs in this behalf expended and have execution thereof.''

Thereafter, on the 27th day of June, 1903, during the same term, upon motion of defendants filed in due time, to modify the judgment and decree in so far as the payment by defendants to plaintiff of the sum of $1,085, the amount of plaintiff's bid at the sheriff's sale, is concerned, the order for the payment of said sum by M. S. C. Donnell was eliminated from the decree.

After unsuccessful motions for new trial and in arrest, plaintiff appealed.

No bill of exceptions was ever filed, so that there is nothing before this court for review other than the record proper.

Plaintiff's insistence, however, is that upon the facts found the judgment is erroneous, unjust and inequitable. In an unbroken line of decisions it has been held by this court that where error is apparent upon the record proper, in an equity case it will modify the judgment or decree, or reverse it and remand it, with directions, or will render such judgment as the facts require. [Blount v. Spratt, 113 Mo. 48; Hamilton v. Armstrong, 120 Mo. 597; Land Co. v. Bretz, 125 Mo. 418; Cochran v. Thomas, 131 Mo. 258; Leavitt v. Taylor, 163 Mo. 158; Singer Manufacturing Co. v. Stephens, 169 Mo. 1; Overshiner v. Britton, 169 Mo. 341; Hughes v. Ewing, 162 Mo. 261.]

The findings of facts was general, and embraced the judgment against Donnell under which the lands were sold, Forsee's connection therewith as attorney for Donnell, and the purchase price paid by plaintiff for said lands at the sheriff's sale, which the court finds

was less than three per cent of the real value of said land at the time of said sale.

We think the facts found fully justified the court in setting aside the sheriff's sale and the sheriff's deed, executed to plaintiff, purporting to convey the land in controversy to him.    As to all issues in the case the judgment for defendants is presumed to be correct, and it devolves upon plaintiff to show that it is not correct. While in equity cases this court will defer in a great measure to the finding and judgment of the chancellor, yet it is not bound to do so "either as to ultimate facts or conclusions of law, and, hence, it has been uniformly ruled by this court in equity cases that the whole of the evidence must be brought up on appeal and a rule of this court to that effect has long been in force." [State ex rel. v. Jarrott, 183 Mo. l. c. 217.]

Plaintiff, however, insists that inadequacy of price as found by the court, is not in accord with the finding that there were apparent liens and encumbrances on the land, at the time of the sale, as follows: "The deed in favor of J. L. Donnell, the deed of trust given by him, the judgment in favor of Ballingall and the judgments in favor of the Citizens National Bank, all amounting to about $74,000. All of these claims and liens, except Ballingall's, were not real, but only apparent liens. All of the liens have been eliminated by the judgment of our Supreme Court.    The Ballingall judgment has been paid in full." In addition to these liens the court also found that there was an attachment lien upon said land for the sum of $2,000. The contention is that these facts show that the price bid for the land was not so disproportionate with respect to its value as to justify the setting aside of the sale and sheriff's deed made in pursuance thereto.

According to the finding of the court the liens upon the lands at the time of the sale amounted to about $74,000, and the $1,085 for which they were sold was less than three per cent of the real value of the lands,

from which we infer that the court's valuation of the land was about $40,000. It has always been held by this court that inadequacy of price alone will not justify the setting aside of a sheriff's sale of real estate under execution, unless the price is so inadequate as to shock the moral sense and outrage the conscience. Then courts will interfere to promote the ends of justice. [Railroad v. Brown, 43 Mo. 294; Holden v. Vaughan, 64 Mo. 598; Knoop v. Kelsey, 121 Mo. 642; Davis v. McCann, 143 Mo. 172.]

In Mitchell v. Jones, 50 Mo. 438, land worth $1,600 sold at sheriff's sale for $50. No fraud was alleged. The sale was set aside upon the ground of the inadequacy of price. The court said: "There may not have been any actual fraud in the purchaser, but the inadequacy of price is so great in this case as to shock the conscience."

In Byers v. Surget, 60 U. S. (19 How.) l. c. 311, it is said: "To meet the objection made to the sale in this case, founded on the inadequacy of the price at which the land was sold, it is insisted that inadequacy of consideration, singly, cannot amount to proof of fraud. This position, however, is scarcely reconcilable with the qualification annexed to it by the courts; namely, unless such inadequacy be so gross as to shock the conscience; for this qualification implies necessarily the affirmation that if the inadequacy be of a nature so gross as to shock the conscience, it will amount to proof of fraud."

It would be difficult to conceive of a sale of land under execution that would be more unconscionable than the one in question. To uphold it would practically be taking the land sold under the execution from defendants, and giving it to plaintiff without the sanction of either law or equity.

But even if the judgment and decree cannot be sustained upon the ground of inadequacy of price alone, yet when such inadequacy is considered in con-

nection with the fact that Forsee was the attorney of
M. S. C. Donnell in defending the suits wherein the
judgments were rendered under which the lands were
sold, and the action and conduct of Forsee in regard
to the levy by the sheriff, and the sale of the lands un-
der execution for which Guinan is alike bound, there
can be no question as to the correctness of the judg-
ment.   Guinan in pursuance of the terms of a written
agreement, theretofore entered into between him and
W. C. Forsee, by which the latter was to collect the
judgments against M. S. C. Donnell and to have one-
half of any amount realized on said judgments and to
hold for him one-half of any property bought by Gui-
nan at any sale under said judgments, bought the lands,
taking the deed thereto to himself.   Forsee had been the
attorney for M. S. C. Donnell in defending against the
procurement of all these judgments, and had received
from him in compensation for his services the sum of
$5,000.   In this connection the court found that Forsee
continued to act as the attorney for M. S. C. Donnell
until December, 1899, and that during his employment
by Donnell he become familiar with all of his business
and the title to and the value of his property.  That
Guinan bought the Wagner judgments March 18, 1900,
and about that time he employed Forsee to collect them.
That Guinan had an execution issued on the larger
judgment, directed to the sheriff of Jackson county,
who levied upon the land in controversy, and, by a sec-
ond levy, levied upon a tract of land that Donnell did
not own.   That Forsee knew at the time that Donnell
did not own the land described in the second levy and
that he directed the sheriff in regard to the levy and
sale of these lands.

     In passing upon the right of an attorney who had
been fully paid for his services to buy in property at
execution sale which he had been employed to look af-
ter, the Supreme Court of the United States, in the case
of Schroeder v. Young, 161 U. S. 1. c. 340, said:

"Although there is no general rule that an attorney may not purchase at an execution sale, provided it be not done to the prejudice of his own clients (Railroad v. Ketchum, 101 U. S. 289, 300), such purchase in itself is calculated to throw a doubt upon the fairness of the sale, and, as is quaintly said of such sales by the Court of Appeals of Kentucky in Howell v. McCreery, 7 Dana 388: 'Public policy and the analogies of law require that they should be considered *per se* as in the twilight between legal fraud and fairness, and should be deemed fraudulent, or in trust for the debtor, upon slight additional facts.' [See, also, Hall v. Hallett, 1 Cox Ch. 134; Jones v. Martin, 26 Tex. 57; Byers v. Surget, 19 How. 303; Blight's Heirs v. Tobin, 7 T. B. Mon. 612.]"

In Davis v. Kline, 96 Mo. l. c. 407, it is said: "If an attorney may not buy in and hold, as against his client, an outstanding title to property about which he gave advice, then he cannot, for his own benefit, be allowed to strike down the very transaction which he advised and put in writing for his clients. It matters not that he is attempting to show that the transaction was fraudulent in fact; nor does it matter that the facts are or can be proved by persons not disqualified to testify. The ground-work of the whole doctrine is, that the attorney cannot take advantage of the trust reposed in him. The plaintiff, who stands as a substitute for Asbury, can therefore take nothing by the sheriff's deed."

In Downard v. Hadley, 116 Ind. l. c. 134, it is said: "The rule is inflexible, and must be maintained without any deviation, that an attorney who is employed to protect or defend a particular title to land, cannot, either during the continuance of that employment or after its termination, without disclosing the facts to, and obtaining the consent of, his client, avail himself of information acquired, or which it was his duty to acquire, while in that relation, and purchase an outstanding title for himself, and set it up in hostility to

that which he was employed to perfect or defend. [Henry v. Raiman, 25 Pa. St. 354; Smith v. Brotherline, 62 Pa. St. 461.]''

Nor is an attorney at liberty to violate the professional confidence reposed in him by his client the moment that relation ceases to exist, nor is it necessary for a party seeking to avoid, to show that an improper advantage has been gained over him. [Henry v. Raiman, 25 Pa. St. supra.]

In Cunningham v. Jones, 37 Kan. 477, it is held that the purchase by an attorney of an interest in the thing in controversy, in opposition to the title of his client, during the litigation concerning the same, is forbidden, because it places him under temptation to be unfaithful to his trust. [Wright v. Walker, 30 Ark. 44; Wade v. Pattibone, 11 Ohio 57; West v. Raymond, 21 Ind. 305; Jones v. Martin, 26 Tex. 57; Howell v. McCreery, 7 Dana 388; Howell v. Baker, 4 Johns. Ch. 120.]

The case of Henry v. Raiman, supra, is so directly in point that we feel at liberty to quote quite extensively from that case, as follows:

''If such a purchase can be justified by showing that, before it was made, the relation of counsel and client had terminated, either by the decision of the cause, or by the conveyance of the client's interest to another, the burden of proof is on the party who affirms this to be the case. But such a transaction is not to be sustained on any such grounds. It is a mistake to suppose that the attorney is at liberty to violate the professional confidence reposed in him by his client, the moment the relation of counsel and client terminates. The necessities of the client compel him to repose unlimited confidence in his counsel. When he is in jeopardy—either of life, liberty, property, or character—he is obliged to repose confidence in his professional adviser, in order that he may be properly defended. If he is threatened with a law suit about his land, he

is compelled to exhibit his title papers to his counsel, and disclose to him every supposed defect in them, in order that imperfections may be remedied, and preparations made to sustain the title. . . . As the necessities of litigation compel confidence on the one side, the policy of the law requires fidelity on the other. The policy which enjoins good faith, requires that it should never be violated. The reasons for requiring it at all demand that it shall be perpetual. Occasions may arise when an upright counsellor may feel himself bound to withdraw from his client's cause, but no circumstance whatever can justify him in betraying the trust reposed under the highest obligation of professional honor. Where fidelity is required, the law prohibits everything which presents a temptation to betray the trust. The orison which deprecates temptation is the offspring of infinite wisdom, and the rule of law in accordance with it rests upon the most substantial foundations. The purchase by an attorney of an interest in the thing in controversy, in opposition to the title of his client, is forbidden, because it places him under temptation to be unfaithful to his trust. Such a purchase, therefore, inures to the benefit of his client. Where the confidence has relation to the title to land, the fidelity of the counsel must necessarily follow the title of his client wherever it goes. . . . If, after the cause is ended, or the relation of counsel and client is terminated by sale, or by the death of the client, the counsel employed to defend the title should be permitted to make war upon it by means of the purchase of the hostile claim, which he was employed to oppose, no one would be safe in the employment of professional aid. If the client's vendees, even his orphan children, may be ruined by means of violating the trust reposed by their vendor or ancestor, and such breaches of trust are sanctioned by the courts, the whole Commonwealth would be overwhelmed in litigation; all land titles would be in jeopardy; the Bar would cease to enjoy the confidence of the

public, and the courts of justice, instead of being the bulwarks of public and private security, would become the most intolerable engines of disturbance and oppression. . . . In Galbraith v. Elder, 8 Watts 81, it was held that the fidelity of the counsel must be forever observed and that a purchase of the adverse title 'after the relation of counsel and client had ceased, is equally forbidden with a purchase during the existence of such relation.' In what has been here said, we do no more than carry out the spirit of that decision.''

Our conclusion is that the sale of the land by the sheriff and its purchase by Guinan for the benefit of himself and Forsee, and the deed to the former for their joint benefit were and are void as to the defendants, and that the trial court correctly so held.

There was not an incumbrance or lien on the land at the time of the sheriff's sale, with respect to which Forsee did not have full and accurate knowledge obtained by him from Donnell as his attorney, and he knew the facts that would defeat them. He knew that the title to the land as shown by the record was such that no man of ordinary intelligence or business capacity would be likely to bid upon them. As said in his brief, in speaking of the title to the land on the day of its sale by the sheriff: ''On that day no man who desired to bid, however astute, could tell whether the deeds from Donnell to his son were good or bad; nor whether the courts would or would not uphold them; nor whether Ballingall's prior judgment lien would or would not be enforced against the land; nor what this court would do with the litigation between Donnell and the bank.''

From having represented Donnell in all transaction in regard to the lands, Forsee occupied a position of superior advantage in regard to the title to them, and he now invokes the aid of a court of equity to take from his client for a mere pittance that which he as attorney for him was employed and paid to protect.

Guinan, under the agreement between Forsee and him-self, holds one-half of whatever interest he acquired by reason of his purchase for Forsee, and is therefore the trustee of an express trust, and is as much bound by the acts and conduct of Forsee prior to and leading up to the sale and purchase of the land as if the pur-chase had been made in their joint names. The pur-chase, therefore, in contemplation of law was for the benefit of Donnell and a court of equity will not assist plaintiff in taking advantage of the bad faith of Forsee, towards his client, in his purpose to take from the latter that which he had been employed to protect.

It is insisted by plaintiff that the action of the court at the June term, 1903, in eliminating from the judgment previously rendered the order or provision requiring defendant M. S. C. Donnell to pay plaintiff $1,085, with six per cent interest from May 19, 1900, was erroneous and unjust for two reasons: First, it granted Donnell affirmative equitable relief upon his cross-bill *without requiring him to do equity.* Second, the alteration or change of the former entry was at-tempted to be founded upon an additional finding of facts, made at a subsequent term of court, and after the time of filing motions for new trial and in arrest had expired.

As to the first proposition, there is no merit in it. Plaintiff bought the property knowing all about the ap-parent liens upon it and of M. S. C. Donnell's right of homestead therein. Being a sheriff's sale, he bought at his peril. Donnell acquired no benefit whatever through plaintiff's purchase of his property—nor was plaintiff in any way misled into purchasing it by rea-son of any act or misconduct of Donnell. Under such circumstances it would be a strange rule of law, equity or morals that would require him to refund to plaintiff the amount by him bid for the property.

As to the other proposition, the lower court, in con-sequence of the motions for new trial filed and contin-

ued to the subsequent term, had a perfect right to modify the former finding and decree, as it did do, as ''all of the parties were present, and the whole matter was in the breast of the court'' (McGurry v. Wall, 122 Mo. l. c. 619; Walter v. Scofield, 167 Mo. 537); and, if plaintiff desired to avail himself of any error of the court committed during the trial, he should have filed his motion to that end within four days after final judgment. [Walter v. Scofield, supra.] But in this case such a course would not, in any event, have been available to plaintiff, because this court would not review the action of the court, otherwise than as to the record proper, without having the evidence before it. The judgment in favor of defendants is presumed to be correct; not having before us the evidence adduced at the trial to enable us to determine for ourselves whether it does or does not authorize the judgment, it will not be held erroneous even though it may not appear to be authorized by the finding of the court. As was said in Blount v. Spratt, supra, ''We do not think it was the intention of the Legislature to abrogate the practice of this court so long followed of supervising the findings of the trial courts in equity cases. If the evidence was before us on proper exceptions, we could review it and determine for ourselves the correctness of the findings.'' It has been held in numerous cases that we are not bound by the finding of fact by the trial court (Lins v. Lenhardt, 127 Mo. 281; Dalrymple v. Craig, 149 Mo. 351; Courtney v. Blackwell, 150 Mo. l. c. 267; Hoeller v. Haffner, 155 Mo. l. c. 597); and it must logically follow that, in order to overthrow a judgment which is presumably free from error, it devolves upon the party assailing it to show something more than the mere fact that the facts found by the trial court do not sustain it, and this he can only do by bringing before this court by bill of exceptions all the evidence in the case, in order that we may review it for

201 Sup—14

ourselves. Such is the law announced in State ex rel. v. Jarrott, supra, which is supported by both reason and authority, and as to the correctness of which there can be no question. If this be not so, then it is idle to say that this court in equity cases where the evidence is before us will review it and determine for ourselves the correctness of the findings, and all prior decisions to that effect should be overruled.

Plaintiff further insists that the answer and cross-bill practically admit that the Donnell deeds were fraudulent, and that he should at least have had a decree setting aside those deeds. Admitting for the sake of the argument only that the deeds were fraudulent, they embraced Donnell's homestead which was absolutely exempt from levy and sale under execution and the only way that any part of it could be sold, though in excess of the homestead right, was to first have the homestead set off and then sell the excess, if any. A debtor cannot have two homesteads set off in different portions of the same tract of land. One set of creditors cannot under executions have defendant's homestead set out from a large tract of land and sell the remainder, and then another creditor levy on the same land and have the sheriff set off a homestead in the land and sell the other portion, including the part set off in the former proceedings as homestead. For, if that could be done, every homestead set off to a debtor could be sold by successive creditors.

A homestead once set off to a debtor remains his homestead, and cannot be sold under execution, although it should increase in value above the amount allowed, without first having the homestead right again adjusted.

As was said in Macke v. Byrd, 131 Mo. 682: "In contemplation of section 5436 [R. S. 1889] the surplus, above the statutory measure, is not available on execution until ascertained and determined by the location of the true homestead itself, in the manner prescribed.

The homestead in dispute in the present case was fixed and defined by the action of appraisers, the sheriff and the court, under the Houck executions in 1876, and the debtor had the right to all the privileges of a homestead owner as to that property, so set off (including the right to sell it), until some. creditor should by proper steps attack the former allotment of the homestead as to quantity or value.''

In the case in hand there had been an execution levied on the land in question in the bank case, and under that levy a homestead was carved out by metes and bounds, and set apart to the defendant. This homestead remained his, and was not thereafter subject to execution. The remainder of the land in question was sold and a sheriff's deed executed therefor to the Citizens National Bank. When the second levy was made and under which the land was sold it included this particular tract of land set out as a homestead. As a homestead had already been set off to defendant there was no necessity for him to claim any homestead in this instance, because his homestead had already been set off to him. The court found that the first execution was ''levied upon the land in controversy,'' that a second levy was made ''upon a tract of land that Donnell did not own,'' that ''Mr. Forsee knew at the time that Donnell did not own the land described in the second levy.'' The pretended homestead in this case was set off under this second levy ''out of real estate which he (Donnell) did not own and in which he had no interest.'' Forsee knew this. The land levied on under the first levy included Donnell's homestead, set apart to him when execution was issued on the bank judgment. ''This fact was well known to Forsee, when as Guinan's attorney he caused this same land to be sold under the Wagner judgment.''

There is no finding that any homestead was attempted to be set off under the first levy on all the lands now in controversy and which included the

specific tract of land theretofore set off as the home-
stead. The finding is that the sale included the home-
stead. Under the authorities submitted, and under the
well-settled law, this finding alone justified the court in
setting aside the sheriff's deed.

It is well settled in this State that a defendant in
an execution may claim a homestead in property which
he has conveyed, even though the conveyance be made
for the purpose of defrauding creditors.

Thus, in Vogler v. Montgomery, 54 Mo. l. c. 584, it
is said: "In this case it appears that Vogler had, prior
to the levy, conveyed his title to the premises to one
Suess, and upon this ground it is claimed that he for-
feited all the protection which the homestead law gives.
If this conveyance was in good faith, and valid, then it
is obvious that an execution and sale under it would
convey nothing; but if it was fraudulent, as it doubtless
was claimed to be by the execution creditor, then the
title was in Vogler, and the homestead law exempted it
from execution. It appears to be the received opinion
that neither a fraudulent conveyance nor an act of
bankruptcy on the part of the head of the family will
produce a forfeiture of the benefits of the homestead
exemption."

That case was followed with approval in Spratt v.
Early, 169 Mo. l. c. 370; wherein GANTT, J., in speaking
for the court, said:

"In Vogler v. Montgomery, 54 Mo. 577, it was
ruled that neither a fraudulent conveyance nor an act
of bankruptcy would produce a forfeiture of the bene-
fits of the homestead exemption. [Citing Cox v. Wil-
der, 2 Dillon, C. C. 46.] That rule was reaffirmed in
State ex rel. v. Diveling, 66 Mo. 375. In Burns v. Ban-
gert, 92 Mo. l. c. 177, that case was again approved, and
it was said of exempt property, 'if his creditors cannot
reach it for his debts, its sale or conveyance is no con-
cern of the creditors, since they have no right or claim
thereon. They can only complain of sales and convey-

ances of property that is subject to their debts. To this extent the creditors have no standing in court.' [Davis v. Land, 88 Mo. 436; Hartzler v. Tootle, 85 Mo. 31.] All these cases were reviewed in Bank v. Guthrey, 127 Mo. l. c. 193, and the doctrine reasserted and finally settled in Macke v. Byrd, 131 Mo. 691.]''

The cross-bill claimed that the conveyance by Donnell to his son was valid, as well also as the deed of trust to secure the payment of the forty thousand dollars purchase money. But if these conveyances were fraudulent, as claimed by plaintiff, then the homestead attached, and he had no right to have it sold under the execution. Under the bank execution all the land in question had been sold and deeded to the bank except the portion set aside as a homestead. Donnell had the right to the homestead set a part to him in the bank case, and when he sold it to his son and took back a deed of trust to secure the payment of the purchase money, he had a perfect right to do so. And even if there had been no general finding for defendants, the trial court was in such circumstances fully justified in setting aside the sheriff's sale, and deed to plaintiff therein.

Our conclusion is that the judgment is for the right party and should be affirmed. *Brace, C. J.,* concurs in the result; *Gantt, Valliant, Fox, Lamm* and *Graves, JJ.,* concur.